# Richmond.

## COAL RIVER COLLIERIES v. EUREKA COAL AND WOOD CO., ETC.

March 18, 1926.

1. BILLS, NOTES AND CHECKS—*Parol Evidence—Liability of President of Corporation Signing a Note of a Corporation without any Words to Indicate that He Signed in a Representative Capacity—Case at Bar.*—In the instant case, an action on a note signed by a corporation and the president of the corporation, without anything to indicate that he signed it as an officer of the corporation, the corporation made no defense and the president defended on the ground that he signed the note as president of the company and was not personally bound thereon. There was a judgment against the company and in favor of the president. The judgment in favor of the president was assailed on appeal because the trial court admitted parol evidence on his behalf to show that he intended to only sign officially and was not bound personally. There was nothing on the face of the instrument or in the manner of the signature of the president to create an ambiguity or uncertainty as to the liability of the party signing.

*Held:* That the admission of the parol evidence was error, both at common law and under section twenty of the negotiable instruments law.

2. BILLS, NOTES AND CHECKS—*Liability of Signers of Note—Note of Corporation.*—The general rule is well supported that when it clearly appears, either in the body of the note or by appropriate words added to the signatures themselves, that a corporation is the party making the promise, there is no liability on the part of the signers.

3. BILLS, NOTES AND CHECKS—*When Maker not Personally Bound—Signing as Agent—Section Twenty of the Negotiable Instruments Act.*—Section twenty of the negotiable instruments act (section 5582 of the Code of 1919) applies in all cases where there is annexed to the signature some word which creates an ambiguity, but where the maker does not add to his signature any word indicating or suggesting that he is not to be personally bound or that he signed otherwise than in a personal capacity, and the instrument does not contain any words indicating that he is not to be personally bound, section twenty does not apply.

4. BILLS, NOTES AND CHECKS—*Signing as Agent—Section Twenty of the*

*Negotiable Instruments Act.*—Under section twenty of the negotiable instruments act (Code of 1919, section 5582), where the instrument contains the words "designated in the section," the party signing is not personally liable if he was duly authorized to sign, the descriptive words need not appear in the body of the instrument, but the "instrument contains" the words if they appear anywhere on the face of the instrument, whether top, bottom, or side.

5. Bills, Notes and Checks—*Signing as Agent—Section Twenty of the Negotiable Instruments Act.*—Section twenty of the negotiable instruments act (Code of 1919, section 5582) deals with the subject of the admissibility of parol evidence to explain ambiguities, the presumption is that the intention was to cover the whole field and that such evidence is receivable only in the cases enumerated in the section.

6. Parol Evidence—*Rule Strictly Adhered to in Virginia.*—In no jurisdiction is the parol evidence rule more often invoked and more strictly adhered to in its integrity, than in Virginia.

7. Parol Evidence—*Where there is no Ambiguity.*—Parol evidence cannot be offered first to create an ambiguity and then to remove it.

8. Contracts—*Delivery—Necessity of Delivery—Conditional Delivery.*—Delivery is essential to the binding effect of every written contract, sealed or unsealed, and such delivery may be absolute or conditional, and certainly, between the immediate parties thereto, it may be shown that the condition upon which the delivery was made has not been complied with. The circumstances of delivery may be shown.

9. Parol Evidence—*Construction of Contract—Position of the Party.*—In case of a doubtful construction, it is permissible to place the expositor in the shoes of the parties to a bilateral contract to ascertain the meaning of the words used, but not to contradict their plain meaning.

10. Bills, Notes and Checks—*Personal Liability—Unexpressed Intention.*—The unexpressed intention of the maker of a note not to be bound personally cannot be permitted to vary the legal effect of his express contract evidenced by his individual signature.

11. Bills, Notes and Checks—*Personal Liability—President of a Corporation—Case at Bar.*—In the instant case a note was signed by a corporation and its president, there was nothing to indicate that the president signed in a representative capacity. The corporation was indebted to the payee of the note who was pressing for payment. The president testified that he sent his note because he had no money at the time.

*Held:* That having signed just as he would have signed if he had intended to bind himself personally, and the note having been accepted by the payee, the president could not be heard to say that he did not intend to be bound personally.

12. Parol Evidence—*General Rule—Writing Presumed to Contain Whole Contract.*—The parol evidence rule in effect declares that where parties have reduced their contract to a writing which imposes a legal obligation in clear and explicit terms, the writing shall be the sole memorial of that contract, and it is conclusively presumed that the writing contains the whole contract. The writing alone is the evidence of the contract and no other will be received.

13. Bills, Notes and Checks—*President of a Corporation—Personally Liable—Case at Bar.*—In an action against the president of a corporation on a note signed by him individually and the corporation, it was contended that the letterhead of the corporation showed that the party jointly signing the note was the president of the corporation. There was no evidence that the payee knew or had its attention called to the fact that the signatory was the president of the corporation. However, that was wholly immaterial as nothing is more common than for officers of a corporation to endorse, or go security on, its paper, and when their names, without more, appear on such paper there is no presumption that they were acting merely officially and only to bind the company.

14. Corporations—*By-Laws—Notice.*—Persons dealing with a corporation are not chargeable with notice of its by-laws limiting the power of its agents to make the customary contracts pertaining to the business they are authorized to transact.

15. Bills, Notes and Checks—*Consideration—Extension of Time of Payment.*—Where there was an existing debt past due from one joint maker of a note to the payee, and the time of payment thereof was extended by the contract, evidenced by the delivery and acceptance of the note, there was sufficient consideration for the promise of the other joint maker.

16. Suretyship—*Extension of Time of Payment.*—An agreement for the extension of the time of payment is a sufficient consideration for the promise of a third person as surety to pay the debt. Mere forbearance to sue, however, is not sufficient, there must be an agreement to forbear, express or implied, but such agreement may be implied from the conduct of the parties and the nature of the transaction.

17. Negotiable Instruments—*Consideration—Antecedent Debt.*—Both before and since the adoption of the negotiable instruments act an antecedent debt has always been deemed a valuable consideration for a promise to pay.

Error to a judgment of the Circuit Court of the City of Norfolk, in an action on a note. Judgment for defendant. Plaintiffs assign error.

*Reversed and final judgment.*

The opinion states the case.

*Swink & Fentress*, for the plaintiff in error.

*Herman A. Sacks*, for the defendants in error.

Burks, J., delivered the opinion of the court.

[1] This was an action by the payee against the makers of the following note:

"$552.60          Norfolk, Virginia, July 19, 1924.
"_____Sixty_____after date we promise to pay Coal River Collieries Co. or order, without offset_____ ____five hundred fifty-two dollars_____60/100 dollars. Negotiable and payable at Merchants and Planters Bank of Berkley. Value received. The drawer and endorser of this note hereby waive the benefit of_____ homestead exemption as to this debt.
"No. A39791.          Due 9–17–24.
          "EUREKA COAL AND WOOD CO., INC.
                    "J. Liebman, Treasurer, N. Orleans."

The coal company made no defense. Orleans defended on the ground that he signed the note as president of the company and was not personally bound thereon, and further that there was no consideration for his signature thereto. There was a judgment against the coal company and in favor of Orleans. The latter judgment is assailed here because the trial court admitted parol evidence on behalf of Orleans to show that he intended only to sign officially, and was not bound personally.

The facts of the case are as follows: The Eureka

Coal and Wood Company was incorporated in November, 1923, and had but three stockholders, all of whom were officers of the company, and their names as such appeared on the letterheads of the company used in its business correspondence. This letterhead showed Orleans as president, a Mr. Foy as vice-president, and Liebman as secretary-treasurer. Sometime thereafter it purchased coal of the plaintiff, and after the account had been standing some time, the plaintiff wrote to the Eurkea Company, on July 17, 1924, a courteous letter requesting it "to make some arrangement to take care of this balance not later than the 28th of this month," or as Orleans testified, "they have asked us to send them some money," and Liebman testified that the note in suit "was sent in response to a request for money." The letter enclosing the note, after expressing appreciation for the indulgence shown and speaking of the company's bright prospects in the near future, says: "Enclosed please find note for $552.60, to be paid in sixty days." The letter enclosing the note was not acknowledged and there was no other communication between the parties until after the note fell due and payment was refused. Orleans, when examined as a witness in his own behalf and in response to a question by his own counsel, testified as follows:

"Q. Now, when you received this letter which asked that you send a check for that past due account, what did you do?

"A. Well, I replied to the letter and I sent him my note because we didn't have no money at that time."

At the trial, and while Orleans was testifying in his own behalf, he was asked by his counsel this question: "When you signed that note N. Orleans, did you sign it to become bound individually, or as president of the corporation?" To which he replied: "I just signed

because I was president of the corporation. That is the way I signed it." Exception was duly taken to this and all other similar questions, but the court overruled the exceptions; being of opinion that the note "is signed by the company and the circumstances of the signature would be sufficient to let in parol evidence." This presents the main question we are called upon to decide.

A number of text books and cases have been cited on both sides, and we have given them the considera- tion which the importance of the question demands, and some of those most relied on are hereinafter considered, but in none of them, so far as we have discovered, has such evidence been admitted unless there was something on the face of the instrument, or in the manner of the signature, to create an ambiguity, or an uncertainty as to the liability of the party signing.

In *Germania Nat. Bank* v. *Mariner*, 129 Wis. 544, 109 N. W. 574, so much relied on by the defendant in error, the note sued on was as follows:

"Milwaukee, Jan. 6, 1905.
"Four months after date The Northwestern Straw Works promises to pay to the order of F. G. Biglow ($20,000.00) twenty thousand dollars at the First National Bank Milwaukee. Value received.
"Northwestern Straw Works,
"E. R. Stillman, Treas.,
"John W. Mariner."

[2] It was held that Mariner was not personally liable because the note was ambiguous on its face, thereby admitting parol evidence to explain the ambiguity, and that the parol evidence clearly showed that he was not personally liable. It was said that "the

general rule is well supported that when it clearly appears, either in the body of the note or by appropriate words added to the signatures themselves, that a corporation is the party making the promise, there is no liability on the part of the signers." Again: "Granting that the section (referring to section 20, negotiable instruments act) does not apply as to the signature of Mr. Mariner, we think it would be conceded that upon its face it is ambiguous so far as Mr. Mariner is concerned. The instrument says that the 'Northwestern Straw Works' promises to pay. The signature of Mariner is the bare signature of an individual. This certainly is not usual, and should arrest the attention of any one dealing with it at once. People do not ordinarily sign contracts purporting on their face to be contracts of others. If they do, the fact itself suggests at once a doubt as to what they mean by it. In other words, the instrument becomes, as to the signatures, ambiguous." After deciding that there was nothing in the negotiable instruments act which applied to the case, and that it must be decided on principles of the common law, the court concludes its opinion as follows:

"It is elementary that, in case a written contract is ambiguous in its terms, parol proof of the facts and circumstances under which it was executed may be introduced to aid in its construction. This rule applies to commercial paper, even in the hands of a third person, because where the ambiguity is apparent to a reasonably prudent man on the face of the paper, he is necessarily put upon enquiry. Mechem on Agency, sec. 443; *Hood* v. *Hallenbeck*, 7 Hun. [N. Y.] 362; 10 Cyc. p. 1051; 4 Thompson on Corp., sec. 5141. The parol evidence in the present case showed without dispute that Mr. Mariner's signature was attached

simply in his representative capacity and as agent of the corporation. There being a plain ambiguity in this respect, appearing on the face of the note, the evidence was properly received, and the judgment against Mariner individually was erroneously rendered."

The case is rested wholly on the ambiguity appearing on the face of the instrument, and is not applicable to the instant case where no such ambiguity appears. In *American Trust Co.* v. *Canevin*, 107 C. C. A. 543, 184 Fed. 657, the note sued on was as follows:

"$15,000.                    "New Salem, Pa., Feb. 26, 1908.

"One year after date_____promise to pay to the order of Fidelity Funding Company, at the First National Bank of New Salem, fifteen thousand dollars, without defalcation. Value received.

        (Signed) "St. Thomas R. C. Congregation,
"By Rev. Ign. Ostaszewski, Treas. and Pastor.
(Endorsed)

    "St. Thomas R. C. Congregation at Footedale.
    "By Rev. Ign. Ostaszewski, pastor.
    "Regis Canevin, trustee.
    "Fidelity Funding Co.
    "By P. J. Keiran, vice-pres't."

The court makes the following statement of facts: "After the note had been delivered to the payee, the Fidelity Funding Company, it placed its endorsement under the name of Regis Canevin and transferred the note before maturity, and for value, to the plaintiff, the American Trust Company. The action is against Canevin only, and he is sued as endorser.

"The form of the note presents the question whether there is, above the endorsement of the Fidelity Fund-

ing Company, one endorsement (that of the St. Thomas Roman Catholic Congregation at Footedale, verified by the signatures of Rev. Ign. Ostaszewski, pastor, and Regis Canevin, trustee) or whether there are two endorsements (one of the St. Thomas Roman Catholic Congregation at Footedale, verified by the signature of Rev. Ign. Ostaszewski, pastor, and the other by Regis Canevin, trustee). The affidavit of defense, however, expressly admits that, before the note was delivered to the Fidelity Funding Company, there was an oral agreement that the defendant should endorse it, although it is further said that the agreement was that the endorsement should be 'as trustee for said congregation.' And the case was tried on the theory that the defendant's signature constituted a separate endorsement. Consequently we must dispose of the case upon that theory."

After referring to some early Pennsylvania cases the court proceeds: "But the question remains: Must the word 'trustee' be rejected as a mere *descriptio personae*, or may the defendant show, by parol evidence, that he intended, by adding the word 'trustee' after his name, to make a restrictive endorsement as trustee for the St. Thomas Roman Catholic Congregation at Footedale?

"Section 20 of the negotiable instruments law (Pa. St. 1920, section 16007) is as follows: 'Where the instrument contains or a person adds to his signature words indicating that he signed for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability.' "

Several cases from New York and Pennsylvania are
then quoted from and the court proceeds: "In the
light of these authorities we think it was competent
for the trial court, in the present case, to enquire whether
the endorsement by Regis Canevin of the note herein
sued on was understood, between him and the Fidelity
Funding Company, to be an endorsement pledging
only the credit of the property which he held in trust
for the St. Thomas Roman Catholic Congregation at
Footedale, and if so whether the plaintiff accepted the
note from the Fidelity Funding Company with notice
of that fact."

Mr. Fessenden was the president of the plaintiff
company and negotiated for the note in suit.  After
reciting the facts of the case as shown by the testi-
mony, the opinion concludes: "Here the authority
was complete, and the question submitted to the jury
was whether the plaintiff knew that the endorsement
was intended to be a restrictive one carrying with it
merely the credit of the property of the society held
in trust by the defendant.  We think such a submission
was in accord with the construction given to the sec-
tion by the courts of New York and Pennsylvania
above referred to.  Mr. Fessenden admits that when
he accepted the note in suit for the plaintiff company
he knew that the defendant was the Roman Catholic
Bishop of Pittsburgh and that he did not understand
that the Bishop was personally bound by his endorse-
ment.  He gave credit to the property which the Bishop
represented as trustee, and not to the Bishop per-
sonally.  To construe the endorsement, in such cir-
cumstances, as a personal obligation of the defendant
is contrary to the intent of the parties, and, we think,
contrary to the intent of the twentyth section of the
negotiable instrument law."

It will be observed that the addition of the word "trustee" to the signature of the endorser brought the case within the terms of section 20 of the negotiable instruments law. In the instant case there is no such addition.

Among the cases relied on in *American Trust Company* v. *Canevin, supra*, is *Birmingham Iron Foundry* v. *Regnery*, 33 Pa. Sup. Ct. 54. In the latter case it was sought to hold James Regnery personally liable on the endorsement "James Regnery, Pres't." But it appears that "when he endorsed his name as president on said note it was known to the plaintiff that it was a restrictive endorsement and was not intended to bind the endorser personally," and that he escaped liability because "the plaintiff took, received and acquired the note upon the credit and as the undertaking of the Catasauqua Rubber Company and consented to and acquiesced in and recognized the endorsement thereupon as that of the said company through its president, the defendant."

In *Kerby* v. *Ruegamer*, 107 App. Div. 491, 95 N. Y. Supp. 408; Kobbe and Manneck were erecting new buildings on lands in Brooklyn. Finding themselves unable to complete the improvements they conveyed the property to the three defendants, in trust, to complete the buildings, settle claims against them, rent, sell or mortgage the property, and apply the proceeds to the claims of the creditors, paying the surplus, if any, to Kobbe. The note sued on was given by the defendants for materials used in making the improvements. To their names as makers were added the words "as trustees, etc.," and the plaintiff, who was the payee, knew all the facts concerning the trusteeship of the makers whom he sued personally. The court construing section 20 of the negotiable instruments

law, held that it was not necessary as to the payee, and the makers are not required (to relieve themselves from personal liability on said note) to represent to him in writing upon the face of the instrument, or orally, information that he already possesses," and relieved the trustees from personal liability.

In *Megowan* v. *Peterson*, 173 N. Y. 1, 65 N. E. 738, the payee brought suit upon a promissory note made by Charles G. Peterson, trustee. The firm of Johnson and Peterson had become insolvent and their creditors appointed Peterson a trustee to manage the business, and thereupon Johnson conveyed all his interest in the partnership property to Peterson. The note sued on was given by Peterson to the plaintiff for lumber purchased by Peterson and used by him in the erection of the buildings which the firm had contracted to erect. The action was against Peterson individually. His defense was that the note was given and was understood by the plaintiff to have been given in his representative capacity, and that he was not personally bound. At the trial the plaintiff insisted that they were entitled to go to the jury on the controverted question whether the plaintiff gave credit to the defendant in his representative capacity or as an individual. The trial court, however, directed a verdict for the defendant. The holding of the trial court was approved by the court of appeals, which, after referring to section 20 of the negotiable instruments law, amongst other things said: "We do not understand that the statute to which we have alluded was designed to change the common law rule in this regard, which is to the effect that as between the original parties and those having notice of the facts relied upon as constituting a defense, the consideration and the conditions under which the note was given may be shown."

[3] In all of these cases there was annexed to the signature some word which created the ambiguity and furnished the occasion for the application of section twenty of the negotiable instruments law. Cases almost without number might be added to the same effect, but to cite them would unnecessarily burden this opinion. Many of them will be found in texts on negotiable instruments law. See especially Brannan's Negotiable Instruments Law, section twenty. We have examined a large number of them, but have deemed it unnecessary to cite them, as they are inapplicable, because, in the instant case, the maker, Orleans, did not "add to his signature" any word indicating or suggesting that he was not to be personally bound, or that he signed otherwise than in a personal capacity, nor does the "instrument contain" any words indicating that he was not to be personally bound.

On the other hand, in *Rudolph Wurlitzer Co.* v. *Rossmann* (St. Louis Court of Appeals, Mo.) 190 S. W. 636, 196 Mo. App. 78, the action was by the payee against Telka Rossman as one of the makers of several notes, two of which were signed:

"International Electric Piano Co.
"M. D. Gross, prest.,
"Telka Rossman."

She defended on the ground that the notes were the notes of the company given for pianos sold by the payee to the International Electric Company; that she was, and had been for a number of years, the secretary of the company and that the plaintiff had known for years that she was an officer of the company; that she had never had any dealings personally with the company; that the plaintiff had been dealing for a

number of years with the International Electric Company; and that when she signed the notes she signed as secretary of the company, in the usual course of business, and for the purpose of binding the company. The court held that the defendant had signed personally, and that to permit parol evidence of the defenses aforesaid would vary and contradict the plain terms of her written contract which could not be done. In the course of the opinion it is said that admitting that the defendant had "mistakenly signed without indicating in what capacity she signed, that mistake is to her own hurt and cannot avail her in this action," and, in concluding the opinion, the court said: "This is probably a hard case on appellant, but we, as a court, cannot disregard or set aside rules which must be applied in the construction of commercial paper by the seeming hardness of a particular case."

*Belmont Dairy Co.* v. *Thrasher*, 124 Md. 320, 92 Atl. 766, was an action at law by the payee of a note signed:

> "BELMONT DAIRY CO., INC.
> "E. C. THOMAS."

Thomas was the president of the dairy company and sought to defend on the ground that he signed as president of the company and not for the purpose of making the note of the company, but relief was denied and a personal judgment rendered against him.

In *Exchange Bank* v. *Schultz*, 167 Iowa 136, 149 N. W. 99, the action was by the payee against the makers of three notes signed:

> "GLENDELL DAIRY CO.
> "By HENRY O. HARSTAD, President.
> "J. E. SCHULTZ."

The defendant, Schultz, pleaded: "That he did not sign the notes in his individual capacity; that while he signed in the manner indicated it was solely as secretary of the company and to bind the corporation and no one else; that he was not indebted to the plaintiff and received no consideration for signing the notes; that if they, as signed, imposed any legal liability upon him, it was due to his mistake in signing the same without using the words "by" before his name and "secretary" afterwards; and that the failure to use the words was by a mutual mistake of both payer and payee."

The case was transferred to the equity side of the court, and it was held that Schultz was personally liable on the note. In the course of the opinion it is said: "The notes as signed by their terms imposed a personal obligation on Schultz, and to escape liability he must show by the testimony that they were signed by him as they now appear, through a mutual mistake of the parties, or that the payees obtained his signature thereto through fraud and misrepresentation; the burden being upon defendant to show the mistake or fraud by a clear, satisfactory and convincing testimony. *Hunt* v. *Gray*, 76 Ia. 268, 41 N. W. 14.

"Again, the mistake must have been a mutual one, or of the defendant alone coupled with such fraud on the part of the payees in taking advantage of the mistake as in equity will relieve him of responsibility, because the payees knew of the mistake on the part of the maker and fraudulently took advantage thereof. *Marshall* v. *Westrope*, 98 Iowa 324, 67 N. W. 257."

In *Casco National Bank* v. *Clark*, 34 N. E. 908, 909, 139 N. Y. 307, 312, 36 Am. St. Rep. 705, 707, it is said: "In the absence of competent evidence showing or charging knowledge in the holder of negotiable

paper as to the character of the obligation, the established and safe rule must be regarded to be that it is the agreement of its ostensible maker and not of some other party, neither disclosed by the language, nor in the manner of execution."

This "established and safe rule" would seem to be peculiarly applicable to the case at bar, where neither the face of the note, nor the manner of its execution, disclosed the fact that N. Orleans signed otherwise than as a personal maker.

When the plaintiff accepted the note as a deferred security for a past due obligation of the Eureka Company, of which it was demanding a prompt settlement, it had the right to rely on its being what it purported on its face to be, the personal obligation of Orleans as well as that of the Eureka Company. Orleans cannot be allowed to escape his plain legal liability by showing by parol what he intended to do, but did not. Such a holding would destroy the value of all written instruments.

[4, 5] Under section twenty of the negotiable instruments act,[1] *where the instrument contains* the words designated in this section, the party signing is not personally liable if he was duly authorized to sign. The cases hold, however, that the descriptive words need not appear in the body of the instrument, but that the "instrument contains" the words if they appear anywhere on the face of the instrument, whether top, bottom, or side. *Germania Natl. Bank* v. *Mariner*, 129 Wis. 544, 109 N. W. 574; *Austin, Nichols Co.* v.

---

[1] "Liability of person signing as agent, etc. Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal or in a representative capacity without disclosing his principal, he is not liable on the instrument if he was duly authorized, but the mere addition of words describing him as an agent or as filling a representative character without disclosing his principal does not exempt him from personal liability. (*Id.*, section 20.)" Va. Code, section 5582.

*Gross*, 98 Conn. 782, 120 Atl. 596, and cases cited. The section also exempts the signer from personal liability (1) if he "adds to his signature" the indicating words of the statute, and "was duly authorized," or, (2) if he discloses his principal. *Austin, Nichols Co.* v. *Gross, supra;* Brannan's Negotiable Insts. Law, sec. 20. In each of these cases an ambiguity is created which may be explained or removed by parol evidence. The three instances above specified are the only cases affected by the section, and as the avowed object of the statute was to create uniformity of rights and liabilities of parties to negotiable paper throughout the union, and section twenty deals with the subject of the admissibility of parol evidence to explain ambiguities, the presumption is that the intention was to cover the whole field, and that such evidence is receivable only in the cases covered by the statute. The instant case is clearly not within the language of the statute.

But if we are in error on this point, and cases not covered by the statute, expressly or by fair implication, are to be governed by the common law rules of evidence, still no relief could be granted under such rules as construed and applied in this State. The leading case in this State on the subject is *Towner* v. *Lucas,* 13 Gratt. (54 Va.) 705, decided in 1857, and it has been consistently followed ever since.

In *Whitaker* v. *Lane,* 128 Va. 317, 346, (11 A. L. R. 1157), 104 S. E. 252, 262, a number of authorities are cited for the proposition that "it is not permissible for a party who has signed and delivered a valid written instrument to show that there was an agreement that he was not to be bound at all; or that suit was never to be brought on it, or that it was to be paid out of a particular fund, or that a blank endorse-

ment was without recourse, or that it was to be paid at a different time from that stated, or that an endorser should be liable only as assignor, or that the promise to pay money was to be discharged in some other manner, or any other similar defense. For such defenses vary the legal effect of the language used in the instrument.''

[6] We know of no jurisdiction in which the parol evidence rule has been more often invoked and more strictly adhered to in its integrity than this, and we have found no case in which it has been relaxed. *Whitaker* v. *Lane, supra,* has been sometimes referred to as a seeming relaxation, but nothing was further from the intention of the court. On the contrary, it is there said that "its strict enforcement ought not to be relaxed and (even) when parol evidence is admissible in contravention of the *prima facie* rights of another, it should be clear, unequivocal and convincing.'' There was nothing new in that case except the holding that a sealed instrument could be delivered in escrow to obligee, thereby conforming such instruments, in this respect, to the well established law applicable to unsealed instruments.

[7] In the case at bar N. Orleans has signed exactly as he would have signed if it had been his deliberate purpose to bind himself personally, and there is no ambiguity about it. The parol evidence is offered first to create an ambiguity and then to remove it. This cannot be done without abolishing the parol evidence rule and overturning a long line of cases running back for three-quarters of a century. The record shows that N. Orleans signed the note without any addition to his name, or anything appearing on the face of the note to indicate that he signed in a representative capacity.

The case of *Robertson* v. *Virginia National Bank*, 135 Va. 166, 115 S. E. 536, is also relied on by the defendant in error as giving him the right to introduce parol evidence to show that he endorsed as president. That was an action between the immediate parties to a negotiable note, and Robertson was permitted to show that he endorsed and delivered the note to the payee on condition that he was not to be bound on it unless and until the note was also endorsed by I. Berglass. This did not vary or alter his contract of endorsement, but was a mere circumstance of delivery, showing a condition annexed thereto which was to be fulfilled before the delivery was complete, or he became liable. This is fully sustained by a line of cases cited in *Whitaker* v. *Lane, supra,* at page 347 (104 S. E. 252).

[8, 9] Delivery is essential to the binding effect of every written contract, sealed or unsealed, and such delivery may be absolute or conditional, and certainly, between the immediate parties thereto, it may be shown that the condition upon which the delivery was made has not been complied with. *Whitaker* v. *Lane, supra.* So it is commonly said that the circumstances of a delivery may be shown. So also it is permissible, in case of a doubtful construction, to place the expositor in the shoes of the parties to a bilateral contract to ascertain the meaning of the words used, but not to contradict their plain meaning. Graves Ex. Evidence, pp. 13-16.

In 2 Williston on Contracts, sec. 810, it is said: "It may be said without qualification that if the parties have made a memorial of their bargain, or the *writing is required by law,* the actual intent unless embraced in some way in the writing is ineffective, except when it can be made the basis for reformation of the writing. * * * * And although the courts may say they

are seeking the intent of the parties the assertion is even more emphatic that this intention can be found only in the expression of the parties in writing. The effect, therefore, is not the real intent but the intent expressed or apparent in the writing which is sought."

[10, 11] We are unable, however, to see how Orleans can be benefited by the application of the foregoing rules of construction. His unexpressed intention certainly cannot be permitted to vary the legal effect of the express contract evidenced by his individual signature. *Woodward, Baldwin & Co.* v. *Foster*, 18 Gratt. (59 Va.) 200. If we look to the circumstances surrounding the parties at the time of the execution and delivery of the note we find that the company of which Orleans was the president was indebted to the plaintiff on open account long past due; that an urgent demand was made upon his company for money, and an eleven day limit was fixed within which the matter was to be closed or "taken care of." At that time the Eureka Company was a going concern, but had no money. The account was not disputed, and a sixty day note of the company would not afford the plaintiff any additional security for its debt, but it was manifest that something must be done promptly to satisfy this time limit demand for money. In this emergency the note in suit, by which Orleans obtained a credit of sixty days, was executed, forwarded to the plaintiff and accepted by it. There is nothing on its face, or in the manner of signing by Orleans, to indicate that the note was to be only the undertaking of the Eureka Coal and Wood Company. On the contrary, the note on its face is the joint note of the Eureka Company and Orleans, and he testified that when he received the letter asking for a check for the past due account, he sent them *his* note "because we didn't have no

money at that time." It is immaterial how Orleans, intended to sign, the important question is how he did sign, and whether there is anything on the face of the note to qualify that signature? He signed without any qualification whatever. If he had annexed the word "president," or some other proper designation to his name, he might have invoked section twenty of the Negotiable Instrument Law (Code sec. 5582) for his relief, but he did not do this. Having signed just as he would have signed if he had intended to bind himself personally, and it having been accepted in that shape by the plaintiff, he cannot now be heard to say it is true "I signed personally, but I did not intend to be bound personally."

[12] The parol evidence rule in effect declares that where parties have reduced their contract to a writing which imposes a legal obligation in clear and explicit terms, the writing shall be the sole memorial of that contract, and it is conclusively presumed that the writing contains the whole contract. The writing alone is the evidence of the contract and no other will be received. Applying this rule to the case at bar it seems clear that the trial court erred in admitting parol evidence that Orleans signed as president of the company and not individually. The note on its face plainly imports a personal liability, and to admit such evidence would be disastrous to business. We cannot afford to relax a rule so beneficial to the business interests of the country, and which is such a safeguard against fraud and perjury.

[13] Something was said in the arguments about the letterheads of the Eureka Company showing that N. Orleans was the president of the company, but there is no evidence that the plaintiff ever received but one letter from the Eureka Company, or that it knew or

had its attention called to the fact that he was such president. However, that was wholly immaterial. Nothing is more common than for officers of a corporation to endorse, or go security on, its paper, and when their names, without more, appear on such paper there is no presumption that they were acting merely officially and only to bind the company.

[14] It was also shown that "under the by-laws, the corporation and president should sign all papers." This, too, was immaterial. Persons dealing with a corporation are not chargeable with notice of its by-laws limiting the power of its agents to make the customary contracts pertaining to the business they are authorized to transact. 2 Cook on Corporation, (5th ed.) sec. 725; *Barber* v. *Stromberg, &c. Co.*, 81 Neb. 517, 116 N. W. 157, 129 Am. St. Rep. 703; 7 R. C. L. p. 149, sec. 121. So far as a different rule is stated in *Bocock* v. *Alleghany Co.*, 82 Va. 913, 919-20, 1 S. E. 325, 3 Am. St. Rep. 128, it is overruled.

[15, 16, 17] It was earnestly insisted that the contract as to Orleans was without consideration. If such were the fact it would be a good defense as between the immediate parties under section twenty-eight of negotiable instruments act (Code, sec. 5590). But there was an existing debt past due from the Eureka Company to the plaintiff, and the time of payment thereof was extended by the contract evidenced by the delivery and acceptance of the note in suit. An agreement for the extension of the time of payment is a sufficient consideration for the promise of a third person as surety to pay the debt. *Williamson* v. *Cline*, 40 W. Va. 194, 20 S. E. 917, 21 R. C. L. sec. 14, p. 960. Mere forbearance to sue, however, is not sufficient, there must be an agreement to forbear, express or implied, but such agreement may be implied from the conduct of the parties and the

nature of the transaction. *Saunders* v. *Bank*, 112 Va. 443, 71 S. E. 714, Ann. Cas. 1913B, 982. Both before and since the adoption of the negotiable instruments act an antecedent debt has always been deemed a valuable consideration for a promise to pay. *Evans, Trustee* v. *Greenhow*, 15 Gratt. (56 Va.) 153; sec. twenty-five negotiable instruments act; Code, sec. 5587.

For the reasons hereinbefore stated, the judgment of the trial court will be reversed, the verdict of the jury set aside, and judgment will be entered in this court in favor of the plaintiff in error, Coal River Collieries, against the defendant in error, N. Orleans, for the sum of five hundred and fifty-two dollars and sixty cents, with interest thereon at six per cent. per annum from the 17th day of September, 1924, until payment, and $1.50 costs of protest, and for costs in this court, and also in the trial court, as authorized by section 6365 of the Code.

*Reversed and final judgment.*