# Staunton

## LOUIS BAACH V. BANK OF POCAHONTAS.

September 17, 1931.

Present, Campbell, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*N. Clarence Smith,* for the plaintiff in error.

*R. O. Crockett,* for the defendant in error.

EPES, J., delivered the opinion of the court.

This is an action brought by notice of motion for judgment in the Circuit Court of Tazewell county by the Bank of Pocahontas against Sidney Bloch, Excelsior By-Products Coal Company, a corporation, and Louis Baach to recover from the defendants the amount due upon a certain negotiable note.

The note sued upon is a note dated Pocahontas, Virginia, October 19, 1926, drawn for $2,875.00, payable at First National Bank, Pocahontas, Virginia, eighty days after date, to the order of Excelsior By-Products Coal Company, and signed by Sidney Bloch. The endorsements on the

back of the note, in so far as here material, read as follows:

"It is expressly agreed that we, the undersigned endorsers of this note, do each waive the benefit of our homestead exemption on this note, and we each * * * agree * * * to pay in addition to the amount due hereon, ten per cent of said amount as attorney's fee, in no case to be less than $5.00.

"P. O.
"Excelsior By-Products Coal Co.
"P. O.   Louis Baach
"P. O.   FIRST NATIONAL BANK
                          "Pocahontas, Virginia
"W. R. Graham, Pres."

The note has on its face an unsigned memorandum as follows:

"Credit the maker.
"When due, April 17, 1927."

We are here concerned with the case only in so far as judgment was entered against Louis Baach. He plead the general issue and filed his grounds of defense which read:

"The defendant, Louis Baach, for his grounds of defense states that he intends to prove the following:

"(1)   That Louis Baach signed said note on the back thereof not in his individual capacity but as an officer of Excelsior By-Products Coal Company, a corporation:

"(2)   That the Bank of Pocahontas is not a holder in due course of said note."

By agreement the case was tried by the court without a jury; and the plaintiff introduced the note sued on and rested.

The defendant introduced an agreement between the First National Bank of Pocahontas, hereinafter called the National Bank, and the Bank of Pocahontas, hereinafter called the State Bank, which with some immaterial omissions reads as follows:

"*This contract* made   * * *   this the 4th day of No-

vember, 1926, * * * between First National Bank of Pocahontas * * * party of the first part, and Bank of Pocahontas, * * * party of the second part: Witnesseth

"Whereas, the party of the first part finds itself embarrassed in meeting its current demands and obligations and is desirous of effecting an agreement by which its depositors may be paid without delay and without the cost and inconvenience of a receivership; and,

"Whereas, the party of the second part, in order to avoid the financial distress and inconvenience to the said depositors in the said First National Bank of Pocahontas and to promote the business interests of the entire community, has agreed, provided it is fully indemnified, and upon certain stipulations hereinafter specified, to assume all liabilities as shown by the books as of this date, except those to shareholders, and pay off the depositors of the party of the first part as hereinafter shown.

"Now, therefore, it is agreed between the parties as follows:

"I. That for and in consideration of the premises, and of the sum of $5.00, paid, * * * the party of the first part hereby sells, transfers, assigns and delivers unto the party of the second part all of its assets of every kind and description consisting of * * * all the notes * * * (and) all other assets of whatever character and description and wherever situated and belonging to the party of the first part.

"II. The party of the first part binds itself, whenever requested, hereafter, to execute or cause to be executed, any and all writings which may be deemed necessary and expedient to vest in the said party of the second part title to and possession of any and all property, real and personal, hereby sold and assigned and which would expedite or facilitate the collection of any notes, discounts, bills re-

ceivable, or overdrafts hereinbefore mentioned, and that it will, wherever requested, make such additional assignments, writings, etc.

"III. In addition to the assets hereinbefore mentioned turned over to the party of the second part by the party of the first part, the party of the first part agrees and binds itself to deliver to the party of the second part contemporaneously with the signing of this contract and agreement, to further indemnify it, the said party of the second part, from any loss or damage by reason of the liabilities it assumes under this contract, a bond executed to the party of the second part by W. R. Graham, H. P. Brittain, H. W. Hicks, R. C. Harrison and L. E. Ward for the sum of fifty thousand dollars ($50,000.00).

"It is expressly agreed and understood that in the event the assets herein transferred are ascertained, as hereinafter set out, as not sufficient to pay off and discharge all of the liabilities assumed hereunder by the said party of the second part, that the said bond of $50,000.00 shall at once become due and collectible, and so much of the proceeds thereof as may be necessary to cover any loss sustained by the party of the second part by reason of its undertakings hereunder shall be applied to that purpose.

"IV. The party of the second part for the consideration hereinbefore stated agrees and binds itself to pay (a) all debts due the United States government by the party of the first part, and all taxes for which the party of the first part is legally liable; (b) all necessary and proper expenses, incident to transferring of the business, including the preparation of papers, contracts, minutes and cost of stationery, clerk hire, if any, etc., incident to transfer, etc.; (c) amount due depositors of the party of the first part when and as called for, in accordance with the conditions of deposit; all expenses, including attorney fees and costs, incurred by the party of the second part in the collection of, or efforts

to collect, the assets, all taxes, and all necessary expenses in handling the business, except the party of the second part shall make no charge for rental or for clerical help for its services in the regular course of business after the transfer has been fully consummated:

"V. It is further covenanted and agreed that whatever, if anything of the assets herein assigned, remains after paying the above liabilities, expenses, fees, costs, taxes, etc., shall be returned to the party of the first part or to its orders,  *   *   *.

"VI.  It is expressly agreed that the party of the second part assumes no other or further liabilities than that herein expressly provided for.

"VII.  It is further agreed and stipulated that the party of the second part shall have wide discretion in the manner of handling the business and collecting and disposing of the assets herein transferred to it, and shall use the best judgment of its officers in regard thereto; that it may make renewals and receive partial payments, exchange or substitute endorsers, receive additional or substitute collateral, and do whatever it believes to be to the best interest of the parties to this agreement in order to effect the collection of the assets.  It shall have discretion as to the steps to be taken to collect such assets, and if party of the second part shall be of opinion that any of such assets are insolvent, worthless or not collectible, then it, party of the second part, may in its discretion make no effort by suit or otherwise to collect such assets so believed to be insolvent, worthless or not collectible and may return them to said liquidating agent, or said trustees for the shareholders, and thereby be relieved from any further responsibility or liability as to such assets; provided if demand be made in writing by said party of. the first part, or said agent, or said trustees so to do the party of the second part shall retain such assets and shall institute such suit or suits or take such necessary

action as may be so demanded, for the collecting of the same.

"VIII. It is further agreed * * * that settlement hereunder shall be made within three (3) years from the date hereof, unless the parties hereto mutually agree to extend the time."

The defendant then introduced, subject to the court's ruling on the admissibility thereof, evidence which according to the construction placed thereon by both the plaintiff and the defendant in error proves the following facts:

Excelsior By-Products Coal Company was a corporation of which Louis Baach was a stockholder and secretary and treasurer, and in which James M. McNeer was a large stockholder.

James M. McNeer was also the cashier of the First National Bank of Pocahontas.

The office of the Excelsior By-Products Coal Company was in the store of Louis Baach in Pocahontas, Virginia, in which Sidney Bloch worked. This store was next door to the First National Bank. What Bloch's connection with the corporation was does not fully appear.

On or about the date on which this note was executed a draft for $2,875.00, for the purchase price of certain machinery, drawn on the Excelsior By-Products Coal Company, with bill of lading for the machinery attached, was received by the National Bank. The Excelsior By-Products Coal Company did not have funds on deposit to pay this draft, and McNeer, as cashier of the National Bank, went to the store of Louis Baach to get a note of the Excelsior By-Products Coal Company to take care of this draft.

McNeer found that Baach was out of town, but found Bloch in the store. McNeer told Bloch that this machinery was on the yard, but before they could move it they would have to "lift a draft" which the bank had; and told Bloch to sign a blank note, which he handed him, and that when

Baach came back he would have him take care of it. Bloch signed the note in blank, which was afterwards filled out by McNeer to read in accordance with the note introduced in evidence.

The National Bank, holding this note drawn by Sidney Bloch payable to the order of Excelsior By-Products Coal Company, but not endorsed by it, paid off the draft.

When Louis Baach returned to town a few days later, McNeer came to him on the street and told him that the Excelsior By-Products Coal Company account at the National Bank was overdrawn; that he had had Sidney Bloch execute this note drawn to the Excelsior By-Products Coal Company; and that "you (Baach) will have to sign the note as secretary for Excelsior." Baach then went into the National Bank and McNeer gave him the note, and Baach, without any further discussion of the matter, wrote the words "Excelsior By-Products Coal Company" and "Louis Baach" on the back thereof as they now appear on the note.

Baach's intention in writing his name on the note was to endorse the name of Excelsior By-Products Coal Company thereon by Louis Baach as secretary and treasurer thereof in accordance with the request of McNeer, the cashier of the National Bank, and not to endorse it himself as an individual; and there is no evidence tending to show that he was required or asked by McNeer to endorse the note individually.

Not long after the National Bank closed its doors Mr. Galloway, the active vice-president of the State Bank, called Baach's attention to this note and the fact that his name appeared thereon as an endorser of the note. Baach at once disclaimed having endorsed the note individually, and asserted that he had signed his name thereon only in his official capacity as secretary and treasurer of the Excelsior By-Products Coal Company.

The trial court was of opinion that, under the decision of this court in *Coal River Collieries* v. *Eureka, etc., Co.*, 144

Va. 263, 132 S. E. 337, 46 A. L. R. 485, the evidence introduced by the defendant was inadmissible; and, in effect, struck out all the defendant's evidence and entered judgment for the plaintiff against Louis Baach, to which judgment Baach has been granted a writ of error.

The court erred in so doing. The point decided in *Coal River Collieries* v. *Eureka, etc., Co.*, is not decisive of the case at bar. Absence or failure of consideration is a matter of defense as against any person not a holder in due course of a negotiable note, and, in such cases may always be shown by parol evidence. Section 5590, Code Va. 1919, N. I. L. section 28; *Coal River Collieries* v. *Eureka, etc., Co.*, 144 Va. 263, at page 284, 132 S. E. 337, 46 A. L. R. 485. The evidence introduced by the defendant was admissible and effective for this purpose.

The contract here in evidence, under and by virtue of which this note was transferred by the National Bank to the State Bank, is materially different from that which arises between the parties by operation of law upon the negotiation of a negotiable note either by endorsation or by mere delivery, and from any other contract known to the law merchant or its statutory enactment in the negotiable instrument law.

While the contract transfers title to the State Bank for value and constitutes it the holder of the notes then belonging to the National Bank, it does not constitute it a *holder in due course* of such notes within the purview of the law merchant or the negotiable instrument law (section 5614, Code Va. 1919; N. I. L. section 52); and the notes transferred under and by virtue of this contract are in the hands of the State Bank subject to the same defenses to which they were subject in the hands of the National Bank. *Paulson* v. *Boyd*, 137 Wis. 241, 118 N. W. 841; *Bank of Tallassee* v. *Jordan*, 200 Ala. 182, 75 So. 930; *Commercial St. Bank of San Augustine* v. *Ellington* (Commission of Appeals of Tex. 1930), 24 S. W. (2d) 359. See also *Farmers' Bank* v. *Miller*,

222 Mo. App. 633, 300 S. W. 834; *Id.* (Mo. App.) 8 S. W. (2d.) 92; *Ward* v. *Oklahoma State Bank*, 51 Okla. 193, 151 Pac. 852, a sale of all the assets of a bank by the bank examiner; *Tidewater So. Ry. Co.* v. *Harney*, 32 Cal. App. 253, 162 Pac. 664, title acquired through consolidation of two corporations. *Woodbury* v. *Glick*, 151 Iowa 648, 132 N. W. 67; *Commercial Nat. Bank* v. *Citizens' State Bank*, 132 Iowa 706, 109 N. W. 198.

In the first three cases above cited the plaintiff bank had purchased all the assets of the defunct bank and had agreed in terms to pay *all* its liabilities, except its liabilities to its stockholders; but the fundamental principle involved in those cases and the case at bar is the same.

█ We are, therefore, of opinion that the defendant, Baach, was entitled to show as a defense to this action that his personal endorsation on this note was made without consideration to him. We are further of the opinion that the defendant's evidence shows that the intention and agreement of the National Bank was to accept this note with the endorsement thereon of the Excelsior By-Products Coal Company without the individual endorsement of Baach; that it neither asked for nor required the endorsement thereof by Baach individually; that the bank gave no consideration therefor, and that his individual endorsement was purely voluntary and without any consideration to him therefor. *Goodman* v. *Gaull*, 244 Mass. 528, 138 N. E. 910; *Cripple Creek St. Bank* v. *Rollestone*, 70 Colo. 434, 202 Pac. 115; *Green* v. *McCord*, 204 Ala. 356, 85 So. 750; *Bank of Carrollton* v. *Latting*, 37 Okla. 8, 130 Pac. 144, 44 L. R. A. (N. S.) 481; *Haddock, Blanchard & Co.* v. *Haddock*, 192 N. Y. 499, 85 N. E. 682, 19 L. R. A. (N. S.) 136.

The judgment will be reversed; and, as the whole case on behalf of both parties seems to have been developed before the trial court, judgment will here be entered for the plaintiff in error, the defendant below.

*Reversed.*