58 N.J. Super. 575 (1959)
157 A.2d 17
GEORGE C. NORMAN, PLAINTIFF-APPELLANT,
v.
CHRISTOPHER A. BELING, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1959.
Decided December 24, 1959.
*576 Before Judges GAULKIN, SULLIVAN and FOLEY.
Mr. Donald B. Jones argued the cause for the plaintiff-appellant (Mr. Frank W. Hoak, on the brief).
Mr. Irwin I. Kimmelman argued the cause for the defendant-respondent (Weisman & Freedman, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff sued in the district court upon a series of promissory notes, alleging that he was a holder in due course. After trial without a jury judgment was entered in favor of defendant. Plaintiff appeals.
*577 Except for dates the notes were all in the following form:

 -------------------------------------------------------------------------
| |
| $ 50.00 April 18 19 57 |
| |
| Three hundred eighty days AFTER DATE WE PROMISE TO PAY |
| |
| TO THE ORDER OF J.H. Laporte and Company |
| |
| Fifty and 00/100 - - - - - - - - - - - - - - - DOLLARS |
| |
| PAYABLE AT National State Bank of Newark |
| |
| VALUE RECEIVED |
| |
| TEAL CORPORATION |
| J. Harold Semar |
| No. ______ DUE April 15, 1958 Christopher A. Beling |
| |
 -------------------------------------------------------------------------

"Teal Corporation" was typewritten. The signatures of Semar and Beling were, of course, handwritten.
Plaintiff introduced the notes in evidence and then rested. Defendant thereupon made an offer of proof that defendant Beling had signed as treasurer of Teal Corporation (Teal) with no intention to bind himself personally. Defendant argued that the typed name "Teal Corporation" followed by the two individual signatures created an ambiguity on the face of the note as to the capacity in which the individuals signed and, therefore, the proffered evidence was admissible because (to quote defendant's brief) "the existence of the ambiguity precludes the holder from becoming a holder in due course." Defendant offered nothing beyond the alleged ambiguity on the face of the notes to challenge plaintiff's status as a holder in due course.
The trial judge agreed with defendant and admitted the evidence over plaintiff's objection. That evidence was to the effect that Semar was president and Beling treasurer of Teal; that the corporate by-laws required two officers to sign notes; that Semar and Beling intended to sign only as officers of the corporation and had no intention of binding themselves individually; and that the notes were *578 in payment for past due bills for accounting services rendered by the payee to Teal. There was no proof of any discussion with the payee about individual liability or non-liability. In fact the notes had been prepared by Teal and mailed to the payee. All notes of the series which had fallen due prior to April 1958 had been paid upon presentation at the National State Bank, out of Teal's account. Beling had no account at that bank. No demand had been made upon Beling for payment of any of the notes until after April 1958, when Teal filed a petition for reorganization in the federal court and thereafter failed to pay the remaining notes.
Upon this evidence the trial court found as a fact that defendant Beling had signed only as an officer of Teal, and that therefore, as a matter of law, Beling was not liable to the plaintiff individually.
Plaintiff argues first that, having placed his name upon the notes in the fashion indicated, Beling must be conclusively presumed to have signed as a co-maker. Plaintiff says that it has been so held in all cases in which the notes were signed exactly as here, even when the payee himself sued, citing Betz v. Bank of Miami Beach, 95 So.2d 891 (Fla. Sup. Ct. 1957); Murphy v. Reimann Furniture Manufacturing Co., 183 Or. 474, 193 P.2d 1000 (Sup. Ct. 1948); Way v. Lyric Theater Co., 79 Wash. 275, 140 P. 320 (Sup. Ct. 1914); Toon v. McCaw, 74 Wash. 335, 133 P. 469, L.R.A. 1915 A. 590 (Sup. Ct. 1913). See also Lazarov v. Klyce, 195 Tenn. 27, 255 S.W.2d 11 (Sup. Ct. 1953); Starley v. Deseret Foods Corp., 93 Utah 577, 74 P.2d 1221 (Sup. Ct. 1938); Moore v. Webster, 191 Wash. 394, 71 P.2d 369 (Sup. Ct. 1937); Coal River Collieries v. Eureka Coal & Wood Co., 144 Va. 263, 132 S.E. 337, 46 A.L.R. 485 (Sup. Ct. App. 1926); Farmers' State Bank of Newport v. Lamon, 132 Wash. 369, 231 P. 952, 42 A.L.R. 1072 (Sup. Ct. 1925); Rudolph Wurlitzer Co. v. Rossmann, 196 Mo. App. 78, 190 S.W. 636 (Ct. App. 1916); Exchange *579 Bank of Marcus v. Schultz, 167 Iowa 136, 149 N.W. 99 (Sup. Ct. 1914).
Furthermore, argues plaintiff, even assuming that the circumstances known to the payee when it received these notes should have raised a question in its mind as to the capacity in which Beling signed, that was not an ambiguity on the face of the notes as against plaintiff here, for he was a holder in due course. Defendant, on the other hand, contends that the very face of the notes  the typed corporate name followed by the two handwritten signatures  must raise a question in the minds of all (including those who would otherwise be holders in due course) as to the capacity in which the individuals signed, and, therefore, the parol evidence was properly received even against plaintiff.
The question is whether the face of these notes presents an ambiguity as to the capacity in which Beling signed. If it does not, the parol evidence was improperly received. Britton, Bills and Notes (1943), pp. 788, 791; 8 Am. Jur. Bills and Notes §§ 468-470, 477-480; Annotations, 42 A.L.R. 1075, 111 A.L.R. 650.
The parties agree that the precise question now before this court has not been decided in any reported New Jersey case. Cf. Weinstein v. Bobker, 115 N.J.L. 187 (E. & A. 1935); Phelps v. Weber, 84 N.J.L. 630 (E. & A. 1913); Simanton v. Vliet, 61 N.J.L. 595 (E. & A. 1898); Reeve v. First National Bank of Glassboro, 54 N.J.L. 208 (E. & A. 1891); Kean v. Davis, 21 N.J.L. 683 (E. & A. 1847); Budelman v. White's Express & Transfer Co., 49 N.J. Super. 511 (App. Div. 1958). However, the able briefs of counsel have skillfully marshalled the authorities in other states.
Section 20 of the N.I.L. (R.S. 7:2-20) provides that:
"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."
*580 It will be observed that this section contemplates two methods whereby the agent may disclose his intention to bind his principal and not himself. The first is by adding to his signature words indicating that he signs for a principal. That is not involved in the case at bar. The second is by seeing to it that the instrument contains words indicating that he signs for or on behalf of a principal. Cf. Britton, supra, pp. 780-781.
To determine whether the "instrument contains * * * words indicating that he signs for * * * a principal," we examine not only each word, name and signature within its four corners, but we take into consideration the position, style and arrangement of the component parts, their relation to each other, and whether they are written, typed, printed or lithographed. As Britton, supra, says at p. 783:
"In most of the cases where an agent is sued personally, the agent in a subjective sense no doubt has intended to bind his principal and has intended not to bind himself. Whether the law will carry out each of these two intentions depends upon the extent of his disclosure on the instrument of his principal's identity and the fact that he, himself, acted in his principal's behalf. The question is largely one involving the form of the signatures and of the relations between them, for the intent which controls is the objective intent of the agent as disclosed on the instrument. Hence an agent may very well be held liable personally, in many cases, where, in a subjective sense, he never intended to be so bound. Justifiable reliance by the adverse party on the objective evidence overrides the agent's subjective intent." (Emphasis ours)
So viewed, "whenever the form of the paper is such as fairly to indicate to the eye of common sense that the maker signs as agent or in a representative capacity, he is relieved of personal liability if duly authorized" (New Georgia National Bank v. J. & G. Lippmann, 249 N.Y. 307, 164 N.E. 108, 109, 60 A.L.R. 1344 (Ct. App. 1928)) and if the instrument does not so "fairly * * * indicate," but is so ambiguous as to put a reasonably prudent man on inquiry as to whose obligation the instrument is, parol *581 evidence is admissible, even against an indorsee  "another way of stating, perhaps, that an indorsee under these circumstances is not a holder in due course." Britton, supra, at p. 788; Rood v. McCann, 103 Ohio App. 55, 144 N.E.2d 263 (Ct. App. 1957). In all other cases the agent is conclusively personally liable, regardless of his subjective intent.
Defendant argues that signing a corporate name always requires the hand of an agent, and that we should take judicial notice that when a corporate name is signed it is nearly always followed by the name or names of the corporate agent or agents who signed it. Therefore, says defendant, the court should conclude as a matter of law that the typed name of a corporation followed by two individual signatures creates an ambiguity as to the capacity in which the individuals signed, citing Rood v. McCann, supra; Canton Provision Co. v. Chaney, 70 N.E.2d 687 (Ohio Ct. App. 1945); First State Bank of Denton v. Smoot-Curtis Co., 121 S.W.2d 667 (Tex. Civ. App. 1938); Austin Nichols & Co., Inc. v. Gross, 98 Conn. 782, 120 A. 596 (Sup. Ct. Err. 1923); Hoffstaedter v. Lichtenstein, 203 App. Div. 494, 196 N.Y.S. 577 (App. Div. 1922). See also Central Bank of Rochester v. Gleason, 206 App. Div. 28, 200 N.Y.S. 384 (App. Div. 1923); Baach v. Bank of Pocahontas, 157 Va. 274, 160 S.E. 68, 76 A.L.R. 1324 (Sup. Ct. App. 1931); Germania National Bank of Milwaukee v. Mariner, 129 Wis. 544, 109 N.W. 574 (Sup. Ct. 1906). For example, in First State Bank of Denton v. Smoot-Curtis Co., supra, the court said at page 669 of 121 S.W.2d:
"No one having signed the note as an official of the corporation, showing an intent to act for and bind the corporation, and Curtis' name appearing on the note, just under the corporation's name, the inquiry is presented  who is Homer S. Curtis and how and why does his name appear on the note?"
Cf. Britton, supra, pp. 782-783, 785.
*582 However, none of the cases cited by defendant involves the precise situation we have here, i.e., the liability of the second signer below the corporate name. Cases such as Denton, supra, which permit parol evidence where the signature is "P. Co., A.," are based upon the assumption (which may be justified, a point which we do not need to decide here) that when business men see a typed corporation name followed by the signature of an individual who does not state the capacity in which he signs, they usually do believe that the individual is signing as agent for the corporation. But is it reasonable to assume that business men have the same belief as to the second (or third or subsequent) individual signer who signs in the style and at the place at which Beling signed? We think not.
Beutel's Brannan Negotiable Instruments Law (7th ed., 1948), § 20, p. 413 cautions "courts to exercise a little common sense and to recognize mercantile usage," adding that "much of the difficulty found in this subject is purely manufactured and would not trouble a business man for a moment." We think that a business man (unaware of the facts known to the payee) would assume that this signature of Beling's on this note is that of a co-maker. In Lazarov v. Klyce, supra, at page 13 of 255 S.W.2d it was said that a court may take judicial notice "of the universal custom that the signature of an individual on the face of a note, at the bottom on the right, without limiting or descriptive words before or after it, is the universal method of signing a contract to assume a personal obligation." Cf. Coal River Collieries v. Eureka Coal & Wood Co., supra, at page 343 of 132 S.E.
In Betz v. Bank of Miami Beach, supra, at page 894 of 95 So.2d, the Florida Supreme Court said (emphasis ours):
"In the notes before us there is nothing other than the name of the corporation, typed above the signatures of Kaye and Betz to indicate that the payee and makers of the notes considered the instrument not to be binding on Betz as an individual maker. Betz signed exactly as he would have if it had been his intention to bind *583 himself individually. His signature as written makes him personally liable as maker.
Not having availed himself of the opportunity, expressed in Sec. [20], supra, to escape personal liability we feel it clear that he is bound individually as a maker, that there is no ambiguity in the notes as to Betz and therefore it is unnecessary to consider whether parol evidence should be admitted to allow him to show his liability to be contrary to what it appears to be from the face of the notes as they were actually signed, as they were delivered to the Bank and as they were sued on.
The result of this decision may be considered to be harsh. Yet in view of the importance of negotiable instruments in business, banking and finance, the need for certainty and stability in the meaning of what appears on the face of such instruments and in view of what we believe the intention and meaning of the pertinent sections of the Negotiable Instruments Law to be we believe the rule we have adopted to be the better view. We believe this rule will cause less harm to commerce and result in less litigation than if we adopted the opposite view."
For the foregoing reasons, we hold that here there was no such ambiguity as to Beling's signature and obligation as would prevent plaintiff from being a holder in due course, and we hold that as against him the parol evidence should not have been admitted. We do not pass upon whether the evidence would have been admissible had the action been by the payee. The judgment is therefore reversed, and the case remanded to the district court for the entry of judgment in favor of plaintiff.