## C. I. T. CORPORATION v. EMMONS.
### No. 6074.

Court of Appeal of Louisiana.
Second Circuit.

June 10, 1940.

Rehearing Denied July 5, 1940.

W. T. Holloway, of Jonesboro, for appellant.

C. D. Moss, of Winnfield, for appellee.

HAMITER, Judge.

In the purchase of an Electrolux refrigerator from the United Electric Service, Inc., of Monroe, Louisiana, on February 18, 1937, defendant, Homer Emmons, executed his installment promissory note, payable to the order of the vendor. An act declaring the granting of a chattel mortgage and the existence of a vendor's lien on the mentioned article was simultaneously signed.

As appears by the last mentioned instrument, the purchase price of the refrigerator under the deferred payment plan was $352.66. Of this amount, $17.50 was paid in cash, and the balance of $335.16, being the principal amount of the note, was payable in 36 equal monthly installments of $9.31 each.

After two payments had been made by defendant under his agreement, the mortgaged property was destroyed by fire. This occurred on June 10, 1937.

On November 18, 1938, the plaintiff, C. I. T. Corporation, commenced this action. The petition recites that it is the holder and owner before maturity, in good faith and for a valuable consideration, of the above note, and that only two of the stipulated monthly installments have been paid. Judgment is asked against defendant for the entire unpaid balance thereof, with interest and reasonable attorney's fees, and with recognition and enforcement of its vendor's lien and chattel mortgage on the refrigerator.

Defendant in his answer admits the execution of the note, together with the security therefor, in connection with the purchase, but denies liability thereunder. As an affirmative defense, he avers that the note included a certain sum for protecting the holder against loss of the chattel through fire or otherwise; that either the contemplated insurance was purchased by plaintiff or the latter was its own insurer; that the refrigerator was destroyed when defendant's home burned; and that the note has been fully satisfied and paid. He further alleges, in this regard, that "plaintiff is not a holder in due course, for a valuable consideration before maturity, of the note herein sued on, plaintiff having acquired said note through its agent, United Electric Service, Inc., with full knowledge that the purchase price recited therein included, among other charges, a specific charge for an insurance premium to insure the refrigerator against loss by fire."

The district court, on the trial of the case, rejected the demands of plaintiff; and it appealed.

The plaintiff corporation, which conducts a large financing enterprise, contends, first, that it is the holder of defendant's note in due course; and that, therefore, the defense outlined in the answer cannot be legally interposed against it.

The record discloses that the plaintiff company purchases installment contracts, such as the one involved herein, from dealers of electric equipment in various states. It furnishes printed forms for the notes and chattel mortgages that are necessary in the credit transactions, and gives written instructions as to the manner and method of their execution. Also, there is provided a rate book or chart for use in calculating the finance charges to be included in the contracts and in determining the amounts of the several installment payments.

For a contract to be acceptable to plaintiff, it must be executed on the furnished forms and in compliance with the written instructions; and the appropriate schedule listed in the rate book must be followed. The dealer is paid therefor only the unpaid balance of the purchase price of the article sold, computed on a cash sale basis. The finance charges and interest belong to plaintiff when collected.

The instruments signed by defendant are of the character above described. On the face of the note is printed: "Negotiable and payable at the office of C. I. T. Corporation with exchange". Printed on its back is the statement: "Pay to the order of C. I. T. Corporation"; and beneath this is the dealer's endorsement.

Plaintiff's directing of the execution of the commercial paper involved herein, particularly its instructing as to the finance charges and the amounts of the monthly installments, indicates clearly that it had full knowledge of defendant's contracting to pay, if he did, a sufficient amount for the obtaining of insurance on

the refrigerator. Consequently, in so far as the defense here offered is concerned, plaintiff, figuratively speaking stands in the shoes of the dealer; and it is not invulnerable under the holder in due course doctrine against defendant's urging of the aforestated equities. "Actual knowledge of defenses or of equities precludes a transferee from attaining the position of a holder in due course, although he paid full value for the instrument." 10 C.J.S., Bills and Notes, § 323. See, also, General Motors Acceptance Corporation v. Swain, La.App., 176 So. 636.

The next contention of plaintiff is that the finance charges did not include a sum to provide for fire insurance on the refrigerator. The evidence, in our opinion, preponderates in favor of the fact that provision therefor was made. Whether or not insurance was actually purchased by plaintiff is of no moment. It could, if desired, carry its own insurance.

The cash sale price of the refrigerator was $297.50. Plaintiff made an initial payment of $17.50; thus leaving an unpaid balance of $280. The principal amount of the installment note was $335.16. Therefore, the finance charges, which defendant agreed to pay, amounted to $55.16.

In certain literature distributed by plaintiff company to dealers of refrigerators of the kind involved herein, the following is said: "Servel-Electrolux refrigerator purchasers under the C. I. T. finance plan are insured in a standard company against loss or damage to the refrigerator by fire, theft, windstorm, tornado, flood, cyclone, explosion, or lightning, all at no increase in finance rates. In case of partial damage, except pilferage, amounting to $5.00 or more, the purchaser is assured of repair of the equipment without cost. In case of complete loss, he is insured for the value of the equipment at the time of loss. Here's an extra value to talk up to your prospects."

Defendant and his wife testified that the salesman, when the purchase was made, informed them that insurance premiums were included in the finance charges imposed. Later they were told by collectors of the plaintiff company that the refrigerator was fully covered by insurance. The testimony of several employees of dealers is to the effect that such insurance is always provided for when an installment sale is made.

The judgment of the trial court, therefore, has our approval; and it is affirmed.