On October 14, 1940, D.D. Strong, conducting his business under the trade name of Dixie Motor Company, at Amite, Louisiana, sold to J.C. Holstead and J.P. Carruth, the defendants herein, certain farming implements consisting of a tractor, a harrow and a hammer-mill and for the credit portion of the purchase price the purchasers executed an installment note for the sum of $953.46, secured by a vendor's lien and chattel mortgage on the property sold. The act of chattel mortgage was duly recorded in the mortgage records of the Parish of St. Helena.
On August 25, 1941, the same party sold to the same defendants a power drive cornbinder and for the credit balance of the purchase price they again executed an installment note in the sum of $303.96, secured in the same manner as the other, on the last property sold, and the act was also recorded in the mortgage records of the Parish.
In the meantime the two notes came into the possession of the International Harvester Company, plaintiff herein, and, alleging that it is a holder in due course and for valuable consideration, it instituted this suit to enforce payment, claiming that they have both matured under an acceleration clause, upon failure of the makers to have paid the first installment on each after it became due. The demand is for judgment in the sum of $1,257.42 with interest at the rate of eight per cent as stipulated, on the installments which are past *Page 474 
due, with ten per cent additional on both the principal and interest claimed, as attorney's fees. Upon proper allegations and affidavit, it obtained an order of sequestration, and having furnished the required bond, all the property sold and mortgaged was seized.
Within a few days after the seizure, the defendants appeared in court and on motion through their counsel the property was ordered to be released from seizure upon their furnishing a forthcoming bond in the sum of $750. They then filed exceptions of vagueness and of no cause or right of action which were overruled, after which they filed their answer in which they denied that plaintiff was a holder in due course of the notes sued on and then, pleading by way of reconvention, averred that it was the seller of the implements they had bought through D.D. Strong, its agent, and further alleging that the equipment was defective and could not do the work for which it had been represented to them it could perform and which had been warranted, they asked for a rescission and annulment of the sale. The defendants then set out at length allegations in which it is made to appear that the harrow, which is a disc harrow, was not the one they had ordered and that although plaintiff substituted another in its place, the latter was defective and has been of little, if any, use even after extensive repairing. They next aver that the cornbinder never could be made to operate properly, despite the efforts of plaintiff's representatives to make it do so, and that because of their inability to harvest their crops of corn and sorghum with it, which they had been guaranteed it would do, and in face of labor shortage, they lost their crops for the years 1941 and 1942, sustaining damages in the total sum of $4,730, which they claim they are entitled to recover from the plaintiff. It may be proper to state at this time that there is no complaint with regard to the rest of the equipment sold and that the claim for rescission is restricted to the cornbinder and disc harrow.
After trial of the case on the merits in the court below there was judgment in favor of the defendants, plaintiffs in reconvention, rescinding the sale of the cornbinder and disc harrow and for damages for the loss of crops for the year 1942, in the full amount prayed for, that is, $1,260. After deducting the price of the cornbinder, $438.96 and that of the harrow, $115, from the principal of the total balance claimed by the plaintiff, that is, the sum of $1,257.42, there remained a balance due the plaintiff in the principal sum of $703.46. This amount was allowed as an off-set against the award of $1,260 for damages, leaving a net sum of $445.54 in favor of the defendants, all as decreed in the judgment.
The plaintiff has appealed and defendants have answered, asking for an increase in the award for damages to the sum originally demanded.
There are several issues presented in the case and they will be discussed in the order in which we believe they should be disposed of.
[1] In the first place, it is contended for the plaintiff that the issues raised by defendants in the reconventional demand are not pertinent to the main demand as that demand is one on two notes which were negotiated to it in due course, for value and before maturity, and were therefore taken and are held free from all defenses and equities available to other parties dealing with the same, among themselves.
There is no merit in this contention for the reason that the evidence abundantly shows that D.D. Strong, the immediate vendor of the farm implements to the defendants, was the plaintiff's contractor dealer at Amite and it is also shown that other of its agents knew all about the sales for which the notes were given in part payment. Indeed, with regard to the cornbinder, these agents seemed to have had as much to do with the sale as did Strong himself. In respect to this issue, plaintiff stands in the same position as though it had been the immediate vendor of the equipment sold and it cannot successfully urge that these notes are immune to the defense raised against them by the defendants, on the ground that it is a holder in due course. General Motors Accept. Corp. v. Swain, La. App., 176 So. 636; C.I.T. Corp. v. Emmons, La. App., 197 So. 662.
The second issue is presented in the defendant's claim for damages for the loss of their crops for the years 1941 and 1942 and on which they were awarded the amount claimed for 1942. This issue involves a question of bad faith on the part of the seller of the farm equipment and also one of warranty. The trial judge did not pass on the question of bad faith and *Page 475 
held that under the limited warranty clause in the contract of sale the defendants could not recover damages for loss of crops in 1941. He held further, however, that after failure of the cornbinder to operate satisfactorily in that year, by further representations made to them by agents of the plaintiff, they were induced to plant crops of corn, soy beans and sorghum in 1942 and as they were again unable to harvest the crops with the cornbinder which could not be made to work as it should, they were entitled to recover the damages claimed for that year.
[2] Conceding that the sale of any of the implements is subject to rescission for vices or defects, unless plaintiff knew of these vices or defects, its obligation, under Article2531 of the Civil Code, is only to restore the price and reimburse the purchasers for the expenses incurred for the preservation of the equipment. By the terms of Article 2545 of the Code, it is only a seller "who knows the vice of the thing he sells and omits to declare it" who is answerable in damages besides having to restore the price and repay the expenses. The evidence in this case does not show that the plaintiff or any of its agents knew of defects in either the cornbinder or the disc harrow, the only two of the several implements sold by it which are now claimed to have been defective. Plaintiff is a reputable manufacturer of these kinds of implements which are listed in its catalog. The evidence shows that the harrow is one of standard make and that in the territory comprising a part of Louisiana and Mississippi there have been five or six hundred sold within the last few years. With regard to the binder it is shown that it also is of standard make and has been generally and successfully used. Quite a few have been sold in the Baton Rouge area and it is built on the same principle as the binders used in the rice fields of Louisiana. We are satisfied that if there was anything defective in either the harrow or the binder therefore, that the defects were unknown to the plaintiff and it cannot be held liable in damages on the ground that it acted in bad faith when they were sold to the defendants.
[3] With regard to any special warranty being made by any of plaintiff's agents relative to harvesting the crops of 1942, we find ourselves unable to agree with the trial judge as, in our opinion, the testimony fails to disclose that the defendants were induced to plant any crops on the guarantee of plaintiff's representatives that they would be successfully harvested. The testimony of the defendants on this point is contradicted by witnesses for the plaintiff and besides the defendants failed to prove that they planted any greater corn, soy bean and sorghum crops in 1942 on the strength of any representations allegedly made to them by plaintiff's agent than they had planted previously without any representation as to the harvesting capacity of the binder. In 1941 they had a larger acreage planted in these crops than in 1942, and in 1943 they again planted as much as in 1942.
We conclude therefore that the trial judge was in error in awarding damages to the defendants for loss of crops for the year 1942 and that their demand for losses of that year as well as for the year 1941 has to be rejected.
[4] This brings us now to the next issue presented which is with regard to the dissolution of the sale of the cornbinder and harrow.
As to the cornbinder, the evidence is sufficient to support the judgment of the district court which rescinded the sale as to it. Whether it was due to defective construction or improper adjustment, the testimony is by no means positive, but the fact remains that it never did operate as it should. Plaintiff sent some of its service men who made certain adjustments and who claim that it was working satisfactorily when they left, but granting that to be so, the preponderance of proof is to the effect that afterwards the man employed by the defendants to operate it never could get it to do the work it was intended to do, satisfactorily. Instead of throwing out the bales or bundles of crop in the proper sizes for which it had been adjusted it would become jammed and have to be set free again.
We believe that the testimony also shows that the disc harrow never did work as it should. The first disc delivered to the defendants was one that was lighter than the one they had ordered. It was replaced with a larger one of the same type but on being put to use this last one also gave trouble by buckling up in the middle just as the other had done. It was carried to the dealer's place of business at Amite where an attempt was made by a local mechanic *Page 476 
to correct what he thought was the trouble, but apparently that didn't work out and the disc never did operate as it should. One of the plaintiff's agents testified that he was unable to give any reason why this second disc should have bent up in the middle as did the lighter one and he admitted that although that would not destroy its use it kept it from running level and it could not therefore work as satisfactorily as it should. There was an insinuation that it might have been run over land that had stumps in it and that may have caused it to bend, but there is no proof whatever in support of it.
[5] Having concluded that the sale of these two implements is subject to dissolution we have now to consider the last point urged on behalf of the plaintiff which is that even though it be conceded, dissolution still could not be decreed for the reason that allegation and proof of tender of the articles sold are essential in order to support the redhibitory action, and in this case neither of these two essential elements are found.
In Article 15 of their answer and reconventional demand, defendants averred that the binder has been of no value to them and that they have asked plaintiff to come get it since they first reported its mechanical deficiencies and further on they averred that both the disc and binder would not work and that both units were asked to be removed from their farm after their initial operations proved unsuccessful. They then alleged, in effect, that if they were not then removed it was because they had been induced to keep them by representations of the plaintiff that they would 'be put in good working condition. These, we believe, constitute sufficient allegations of tender and although the proof on this point is more or less inferential we do think that there was enough notice given plaintiff before suit was filed by it, that these two implements did not work satisfactorily and that defendants did not intend to keep them and pay for them. A letter written by one of the plaintiff's representatives to its dealer at Amite, on August 6, 1942, indicated that he had knowledge of the trouble complained of with regard to the binder. As a matter of fact service men were sent to the defendants' farm to try to adjust it and make it work, but on September 12, 1942, they were advised by letter of the defendants written on that date that the binder still was not working and that they had been forced to resort to a mowing machine with which to harvest their crop.
This last contention of the plaintiff therefore is found to be without merit and it follows that the sale of both these articles has to be rescinded.
For the reasons herein stated it is therefore ordered that the judgment appealed from be and the same is hereby amended and recast so as to read as follows:
It is ordered that there be judgment in favor of the defendants and against the plaintiff, rescinding the sale of one short power drive, one row cornbinder, giving the defendants credit for its price of $438.96 as of the date of sale, August 25, 1942, and also rescinding the sale of one McCormick-Deering 6 1/2 B B harrow, giving the defendants further credit for its price of $115, as of the date of sale, October 14, 1940, and that said cornbinder and harrow be decreed to be held by the defendants subject to the order and disposition of the plaintiff; further, it is ordered that plaintiffs have and recover judgment against the defendants, J.P. Carruth and J.C. Holstead, jointly and in solido, in the sum of $1,275.42, with interest at eight per cent per annum as prayed for, subject to the credits herein allowed, and an additional amount of ten per cent on the principal sum remaining due and the interest thereon.
It is further ordered that the vendor's lien and chattel mortgage bearing on the remaining property sold by plaintiff to the said defendants be and the same are hereby recognized and made effective; that the said property be sold thereunder and that out of the proceeds of said sale plaintiff be paid by preference and priority over all persons whomsoever, the full amount of its claim. Costs of this appeal to be paid by the defendants and all other costs to be equally prorated between the respective parties litigant. *Page 561