McBRIDE, Judge.
Plaintiff, White System of New Orleans, Inc., brought this suit against defendants, Willie Mae Hall and Frank Hall, seeking judgment against them jointly, severally, and in solido for the sum of $541.79, with interest at the rate of eight per cent per annum from July 7, 1948, until paid, and with twenty per cent attorney’s fees, said amount being the balance due on a promissory note for $609.65, dated February 19, 1948, payable to “bearer” in installments, of which note plaintiff alleges itself to be the holder and owner in due course.
The circumstances surrounding the execution by defendants of the note sued upon, briefly stated, were: a few days before February 19, 1948, one Frank J. Tully, doing business as Fluorescent Lighting and Refrigeration Sales, contacted Willie Mae Hall relative to the purchase of a Victory beverage cooler box for use in her restaurant and bar. When informed by Tully that the cash price of the box was $570.00, Willie Mae Hall stated that she was unable to pay the price in cash, but expressed a willingness to buy the box on terms of credit. Ultimately, it was agreed that Willie Mae Hall would make a down payment of $80.00 cash, and execute a note, which was to be secured by chattel mortgage on the box, for $609.65 (which included $119.-65 carrying charges), payable in installments maturing on a designated day of each month thereafter.
On February 19, 1948, Willie Mae Hall and her husband, Frank Hall, signed and delivered to Ttilly the note sued upon, and at the same time they executed the act of chattel mortgage securing payment of the note. On the same day, Tully delivered the beverage box to Willie Mae Hall’s establishment, where' it was uncrated and installed.
Also on the same day, Tully sold the note to plaintiff for $490.00. The evidence shows that the transaction was what is termed a “recourse deal,” and as á prerequisite to its purchase of the note, plaintiff required that Tully sign the same as an “accommodation maker,” and his signature appears on the face of the note immediately above the signatures of the original makers, Frank Hall arid "Willie Mae Hall. " :
After paying the first two installments, the defendants defaulted in payment, and- *651 plaintiff, availing itself of the acceleration clauses of the note, instituted this suit.
Defendants, by original and supplemental answers, defend the suit upon the grounds (1) that White System of New Orleans, Inc., is (a) the original holder of the note, or (b) a holder with knowledge or notice of the equities exisiting between the defendants and Frank J. Tully, and (2) that they are not liable on the note, for the reason that the consideration therefor has failed, in that the beverage box, in part payment of the purchase price of which the note was given, is useless and imperfect and is incapable of performing the service for which it was purchased.
In the court below, there was judgment in favor of plaintiff as prayed for, from which the defendants have perfected this suspensive appeal. As appears from his assigned written reasons for judgment, the judge a qua concluded that plaintiff is a holder in due course of the note sued upon, and, as such,, is immune to any defenses or equities available to the defendants as against their vendor, Frank J. Tully.
The first point to be decided is whether the appearance of the signature of Frank J. Tully, immediately above' the signatures of the defendants, on the face of the note, has the legal effect of placing plaintiff in the category of an original holder of the note. We do not think that it has. The note, which is payable to bearer, could have been negotiated by Tully to the White System of New Orleans, Inc., by mere delivery and without endorsement. The sole and only purpose of plaintiff in having Tully affix his signature to the instrument as an' “accommodation maker,” was to accord to itself additional security, and the fact that Tully’s name appears above that of the original makers on the face of the note, and not on the back of the paper, the usual and historic situs for endorsements, does not in any wise alter the status of the White System of New Orleans, Inc., as a holder of the note in due course quoad Willie Mae Flail and Frank Hall. It is unquestioned that defendants executed and delivered the note to Tully for value, and that Tully in turn transferred it to the plaintiff for a valuable consideration, to-wit, the sum of $490.00.
While, the proposition under consideration has never been passed upon by an appellate court in, this state, so far as we are able to learn, there are several cases emanating from other jurisdictions involving analogous situations, in which the holdings of the courts appear to be sound.
It was said in Herring v. Woodhull, 29 Ill. 92, 81 Am.Dec. 296: “The first point made in this case is, that the note was not properly indorsed, the transfer being on the face of the note. Literally, indorsement means a writing, in dorse, upon the .back of the bill or note. But it is well established, that though such is its import, it may be made on the face of the bill, and numerous indorsements may -be made on a separate paper, called an allenge. Chit. on Bills, 227; Yarborough v. Bank of England, 16 East, 12; Rex v. Bigg, 1 Strange, 18; Story on Promissory Notes, sec. 121; Gibson v. Powell, 6 How. 60, 6 Misc. 60. And any form is sufficient which manifests an intention to transfer the note. Moies v. Bird, 11 Mass. 436, 6 Am.Dec. 179.”
In First Nat. Bank of Etowah, Tenn., v. Messer 136 Ga. 226, 71 S.E. 148, 149, appears the following comment: “The ordinary -and usual mode of indorsing a negotiable instrument is to 'write the name of the indorser upon the back of the paper. But where the payee writes his name on the face of the note under the maker’s signature, the effect is to transfer the title of the note to the transferee, and the payee becomes liable as an indorser. Perry v. Bray, 68 Ga. 293.”
In Fisher Lumber & Coal Co. v. Robbins, 104 Kan. 619, 180 P. 264, 265, the trans-feror of a note signed his name on its face beneath that of the maker, and the court said: “As the indorsement was written on the instrument itself, there was compliance with the requirements of the act,, and the relation of Dobbins to the instrument, together with his signature, implied; that he signed it as an indorser and not as a maker. * * * ”
Appellants’ second contention is that the White System of New Orleans, Iric., is not *652 a holder of the note in due course, because it had full. knowledge of and directed the transaction between Tully and defendants, a'rid knew of'the conditions of the contract between them, especially of the service 'which Tully had agreed to render to defendants, and of the one-year guaranty of the beverage box.1
James M. Cash, plaintiff’s . secretary-treasurer, testified that he was familiar with, the contract entered into between Tully and the defendants. A day or so before the salé was consummated, Tully called at plaintiff’s office and inquired of it if it would be willing to purchase the note-of Willie Mae Hall and Frank Hall evidencing the deferred balance on the credit portion of the price of the beverage box, Tully at the time disclosing to Cash all details connected with the proposed sale. The White System of New Orleans, Inc., as is its custom in all similar transactions handled by it, made an investigation of the financial responsibility of Willie Mae Hall and Frank Hall, and being 'satisfied that their credit- standing was good, agreed to purchase the note from Tully. Printed forms of the notes and chattel mortgages used, by plaintiff in its financing business were furnished to.Tully, and the amount of the financing or handling charges was computed. Said charges in this particular transaction amounted tp $119.65.
Counsel argue that plaintiff, by virtue of having thus directed the transaction and having had knowledge of the details thereof, cannot, under the established jurisprudence of this state, be considered a .Holder-in due.course of the nóte sued-upon, and, therefore, defendants are entitled to interpose as against plaintiff the defense that redhibitory vices and defects existed in the be.verage. cooler, the subject of the sale.
Counsel point to four cas.es, decided by the First and Second Circuit Courts of Appeal, as authority for this proposition.
In the first, General Motors Acceptance Corp. v. Swain, La.App., 176 So. 636, 638, decided by the First Circuit Court, wherein the defendant urged usury as a defense, it was held that the plaintiff was not a holder in due course where he directed and controlled the entire financial transaction between the original parties. We quote from the opinion:
“ * * * Plaintiff furnished the dealer with a chart by which the dealer could figure the amount to be added to the cash sale price of a car to cover the differential in case the dealer should desire plaintiff to handle the deferred balance in order for the dealer to realize the cash, sale price on the car-sold. The plaintiff also furnished the dealer with the blank notes and chattel mortgages to' be used in the transactions where it handled the pap'er. In this particular case, it is shown that plaintiff credited to defendant the overcharge on th,e differential the day after it acquired the note. In view of these circumstances, it must be assumed that plaintiff was fully aware of the manner in which the differential had been figured and the terms on which the car had been sold.
Consequently, plaintiff is in the same position with reference to the defense here made on the note as the dealer and original holder would have been had the suit been brought by the dealer instead of plaintiff. Therefore, if there was an infirmity in the note on account of usury, the defendant has the same right to plead this infirmity against the plaintiff as he could have pleaded against the original' holder. ' Negotiable Instruments' Law, Act No. 64 of 1904, Sections 52, 56, and 58.”
The next case in this line of decisions is C. I. T. Corp. v. Emmons, La.App., 197 So. 662, 663, decided by the Second Circuit. The defendant there purchased a refrigerator from an áppliance dealer, to whom he issued his note as partial consideration for the sale. The dealer negotiated the noté to plaintiff, who sued thereon when defendant defaulted in payment. The suit was resisted upon the ground that the refrigerator was destroyed by fire, and that one of the charges made in the financing of the transáction had been for adequate fire insurance covering the refrigerator. The court, in holding that plaintiff was not a holder in due cour.se, had the following to say:
“Trie record discloses that the plaintiff company purchases installment contracts, *653 such as the one involved herein, from dealers of electric equipment in various states. It furnishes printed forms for .the notes and chattel mortgages that are necessary in the credit transactions, and gives written instructions as to the manner and method of their execution. Also, there is provided a rate book or chart for use in calculating the finance charges to be included in the contracts and in determining the amounts of th.e several installment payments.
“For a contract to be acceptable to plaintiff, it must be executed on the furnished forms and in compliance with the written instructions; and the .appropriate schedule listed in the rate book must be followed. The dealer is paid therefor only the unpaid balance of the purchase price of the article sold, computed on a cash sale basis. The finance charges and interest belong to plaintiff when collected.
* if * .* ■ * *
“Plaintiff’s directing of th’e execution of the commercial paper involved herein, particularly its instructing as to the finance charges and the amounts of the monthly installments, indicates clearly that it had full knowledge of defendant’s contracting to pay, if he did, a sufficient amount for the obtaining of insurance on the refrigera.tor. Consequently, in so far as the defense here offered is concerned, plaintiff, figuratively speaking stands in the shoes of the dealer; and it is not invulnerable under the holder in due course doctrine against defendant’s urging of the . aforestated equities. ‘Actual knowledge of defenses or of equities precludes a transferee from attaining the position of a holder in due course, although he paid full value for the instrument.’ 10 C.J.S., Bills and Notes, § 323.”
The above case was succeeded by a case of the First Circuit, International Harvester Co. v. Carruth, La.App., 23 So.2d 473, 474, in which a dealer sold to defendant certain farm equipment for which defendant gave his notes, which were sub- . sequently negotiated to plaintiff. It was shown that the dealer was, the agent of plaintiff. The court held that plaintiff was not a holder of the the notes in due course, and that the defense that the equipment was defective was available to defendant. The court said:. “There is no merit in this contention for the reason that the evidence abundantly shows that D. D. Strong, the immediate vendor of the farm implements to the defendants, was the plaintiff’s contractor dealer at Amite and it is also shown that other of its agents knew all about the sales for which the notes were given in part payment. Indeed, with regard to the corribinder, these agents seemed to have had as much to do with the sale as did Strong himself. In respect to this issue, plaintiff stands in the same position .as though it had been the immediate vendor of the equipment sold and it cannot successfully urge that those notes are immune to the defense raised against them by the defendants, on the ground that it is a holder in due course. General Motors Accept. Corp. v. Swain, La.App., 176 So. 636; C. I. T. Corp. v. Emmons, La.App., 197 So. 662.”
The last of this line of cases is Citizens Loan Corp. v. Robbins, La.App., 40 So.2d 503, 504, decided by the Second Circuit. In this case the defendant purchased án automobile, on which there1 was a chattel mortgage in favor of plaintiff, from otle H. F. Hunter. Plaintiff released Hunter and, on standard printed forms, prepared a bill of sale transferring the automobile from Hunter to the defendant, drew a chattel, mortgage, which was executed by Robbins, and supplied a printed promissory note'which was" made payable to Hunter, signed by Robbins, and on the reverse side endorsed by,Hunter to plaintiff. The defendant paid the plaintiff corporation $10.-00 for the services rendered. Plaintiff sued when Robbins defaulted on, the note. The defense was made that Citizens Loan Corporation was not a holder in due course, and as a consequence was answerable for alleged redhibitory vices and defects in the automobile, which had gone out .of control on the second day after it was purchased, and had been completely demolished. The court permitted the defense to prevail, decreeing that plaintiff was not a holder in due course, saying:
*654 “We think it is clearly established by the jurisprudence of this State that the transferee of a negotiable note who has actually directed the transaction between vendor and purchaser is precluded from claiming the protection accorded a holder in due course. C. I. T. Corporation v. Emmons, La.App., 197 So. 662; General Motors Acceptance Corporation v. Swain, La.App., 176 So. 636.
“The evidence in the instant case conclusively establishes the fact that plaintiff was so directly interested and involved in the transaction of purchase that he cannot escape the legal imputation that he stands in the shoes of the vendor.”
The peculiar facts of the first three of the cited cases unquestionably justify the conclusions reached therein. All that the Swain and Emmons cases held was that where the financial transaction was dictated and controlled by plaintiff, he would be denied recovery, even though the note had been negotiated to him, as the defect in the title of the note arose directly from the financial transaction itself. The gist of the holding in the Carruth case is that where the holder of the note was the principal of the person to whom the note was originally issued, he would be exposed to all of the defenses that could be raised against his agent.
It must be noted that these cases are not authority for -the proposition that an independent and separate third party, wh,o merely furnished the blank forms for , the consummation of the financial transaction, and computed the financing or handling charges, could be defeated in his action on the note which he purchased in good faith, by a defense based on a redhibitory defect in the chattel which was the subj ect matter of the sale for which the note was given in representation of the purchase price.
The Swain, Emmons, and Carruth cases are clearly distinguishable from Citizens Loan Corp. v. Robbins, supra, and are not authority for the holding in said case. We question the logic of that decision, and cannot at all agree with our brothers of th'e Second Circuit.
Act No. 64 of 1904, § 52, sets forth that a holder in due course is one
“ * * * who has taken the instrument under the following conditions:
“1. That it is complete and regular upon its face;
“2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
“3. That he took it in good faith and for value;
“4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”
As to plaintiff, none of the prescribed requirements are lacking. Merely because it investigated into the financial soundness of the defendants before agreeing to accept their note, computed the financing or handling charges, and- "furnished Tully with blank notes and chattel mortgages to be used in the transaction, we do not think it can be said that plaintiff became so involved in the transaction of purchase that it stands in the shoes of the vendor and is to be precluded from claiming the protection vouchsafed a holder in due course by the act. ,
We can see no reason why one contemplating advancing his money for the financing of another’s purchase of property, has not the unqualified right to stipulate in advance the amount to be-charged for the financing, and to exact that the purchaser’s note and chattel mortgage shall be on approved forms furnished by the lending ágency.
To .hold otherwise would do . violence to banks and finance companies, such as plaintiff, and the result would be that almost all lending institutions would be throttled and put out of existence. The purchasers of commercial paper would become so bound up with the vendor that months after the note had been negotiated to the holder, his suit on the note might well be defeated by the defenses of redhibition, or the failure of the vendor to fulfill his obligations to the purchaser, etc. The salutary purpose of Act-No. 64 of 1904, endowing negotiable instruments, as far as possible, with all of the attributes of currency, *655 and thus to stimulate and encourage trade and commerce, would be frustrated.
Our minds are free of the slightest doubt that the White System of New Orleans, Inc., is a holder in good faith of the note sued upon. Section 52 of the statute, which defines a holder in due course, must be construed in connection with Section 56 of the act, which provides: “To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.”
Appellants’ contention that, whereas the plaintiff knew of Tully’s guaranty of the beverage cooler box it was bound thereto just as was Tully, is fully answered by what the Supreme Court said in the case of Martol v. Lafayette Sugar Refining Co., 153 La. 248, 95 So. 706, 707:
“For, conceding that plaintiff knew of said guaranty (and the evidence tends to show that he did), nevertheless:
“ ‘If it were known to the transferee of a negotiable * * * note, acquired for value before maturity, on taking it, that the consideration was future and contingent, and that there might be offsets against it, this would not make him liable for the equities between the original parties. * * * It cannot affect the negotiability of a note that its consideration is to be thereafter realized, or that from some contingency it may never be enjoyed.’ State Nat. Bank v. Cason, 39 La.Ann. 865, 2 So. 881.
“And again: ‘If the consideration of the note had not failed at the time of its transfer, the maker cannot set up as a defense that the holder knew that there might be offsets against it.’ Sadler v. White, 14 La. Ann. 177.
“This doctrine was affirmed in Pavey v. Stauffer, 45 La.Ann. 353, 12 So. 512, 19 L.R.A. 716, and again in Marx & Sons v. Frey, 137 La. 948, 958, 69 So. 757, and is in accord with the general law of Negotiable Instruments. See 8 Corpus Juris, 509, § 718, and 3 Ruling Case Law, 1067, § 273.”
Nothing in the actions of plaintiff can be pointed to which would remotely tend to impute bad faith on its part.
Section 57 sets forth the immunities which clothes a holder in good faith, as follows: “A holder in due course holds the instrument free from any defect of title of prior parties, and free from de-fences available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereori.”
Thus, having reached the above conclusions, it is unnecessary that we pass upon the' question whether the beverage cooler was the subject of the alleged redhibitory vices and defects.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.