121 So.2d 78

UNIVERSAL C.I.T. CREDIT CORPORATION

v.

Edward C. ALKER and Conrad Duvic.

No. 44260.

May 31, 1960.

Curtis, Foster, Dillon & Huppenbauer, Gerard M. Dillon, New Orleans, for defendant-appellant.

George T. Fisher, Frank C. Moran, Jr., New Orleans, for plaintiff-appellee.

SIMON, Justice.

Plaintiff, Universal C.I.T. Credit Corporation, alleging itself to be the holder and owner before maturity and for value of a certain promissory note, made and subscribed by defendants Edward C. Alker and Conrad Duvic to the order of New Orleans Motor Co., Inc., representing the balance due on the purchase price of a 1957 Ford Ranch Wagon, and by the dealer endorsed to plaintiff, instituted this suit for the recovery of the balance due thereon in the sum of $2,289.98, together with accruing interest, attorney's fees and costs.

Defendants denied plaintiff's allegations in general and averred that they were officers of J'Alkard Enterprises, Inc.; that the corporation purchased the ranch wagon from New Orleans Motor Co., Inc., and that in partial payment thereof the corporation executed the note herein sued upon and granted a chattel mortgage to New Orleans Motor Co., Inc., as security; that the promissory note and chattel mortgage, which were written and printed on one sheet of paper, at the time defendants signed them, were subscribed by defendants for and on behalf of J'Alkard Enterprises, Inc., solely in their representative capacities as officers or agents of that corporation and not in their individual capacities or with the intention or purpose of becoming personally bound thereon. Defendants further alleged that the New Orleans Motor Co., Inc., at all times had actual knowledge of these stated facts; that the motor company was the agent and/or representative of plaintiff in connection with the execution of the promissory note and chattel mortgage and that such knowledge as the motor company

had concerning the purpose for which defendants subscribed their names thereon was imputed to plaintiff as its principal. Defendants alleged that plaintiff's recourse is against J'Alkard Enterprises, Inc.

After trial of the case, the district judge rendered judgment for plaintiff finding that although plaintiff participated in the execution of the chattel mortgage and promissory note and must be charged with knowledge of any equities existing between the original parties, it was not the intention of defendants to execute the note on behalf of J'Alkard Enterprises, Inc., but to purchase the station wagon in the name of the corporation and individually sign as comakers.

Defendant Alker mistakenly appealed to the Court of Appeal for the Parish of Orleans, which transferred his appeal to this Court. Upon Alker's failure to timely file the transcript of record in this Court, his appeal was dismissed. 119 So.2d 834.

The appeal of defendant Duvic was timely perfected and is now before us.

The record shows that the note and chattel mortgage were prepared and signed on January 18, 1957, the motor company having used a form furnished it by plaintiff (plaintiff having furnished its printed forms to the motor company to be used by the latter in its financing operations). It is also shown that the motor company had business dealings with other finance companies, the financing of its general business sales not being confined to plaintiff alone. It also appears that the note and chattel mortgage at the time of the execution thereof were printed on one sheet of paper, the note being detachable by means of perforations; that prior to the execution of the note and chattel mortgage Mr. Eustis, a salesman of the motor company, telephoned an employee of plaintiff-company asking the latter whether it would agree to accept the financing of this particular transaction; that this employee, whose identity and name was not known to Mr. Eustis and also unknown to the finance company, agreed to accept the note on condition that it would bear two signatures, namely the signatures of both parties involved in the purchase. After Mr. Eustis assured plaintiff that this would be done, the note and chattel mortgage were executed, signed by Alker and Duvic, endorsed by the mortgage company, and delivered by messenger to plaintiff's offices.

On the face of the note and chattel mortgage there appear two lines to be used for the signatures of the customer. The signatures appearing on the chattel mortgage and promissory note are unqualified and are without any designation of capacity other than as individuals; and, more particularly, the signatures do not designate that Alker and Duvic were acting in their official corporate capacities.

Immediately after the purchase of the vehicle, it was driven to Mexico on corporate business by a Mr. Bayard, one of the stock-

holders of J'Alkard Enterprises, Inc., and has never been returned to this country, nor has any explanation been given as to the whereabouts of Mr. Bayard. The corporation suddenly became insolvent shortly after the purchase of the automobile; and its abbreviated corporate status, if any, has since vanished.

▇ The salient and decisive question before us is whether Universal C.I.T. Credit Corporation is charged with knowledge of the infirmities in the instrument which it purchased from New Orleans Motor Co., Inc., thereby precluding it from being a holder in due course.

LSA–R.S. 7:52 defines a holder in due course as a holder who takes an instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

LSA–R.S. 7:56 defines "notice" as used in Section 52(4) thus:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Plaintiff's branch manager testified that Eustis was informed it would be necessary, before it would accept the financing of defendants' purchase, for Alker and Duvic, whose individual credit ratings were acceptable, to sign the note and chattel mortgage in their individual capacities since J'Alkard Enterprises, Inc., was a newly formed corporation without any credit rating whatever (the act of incorporation having been executed and filed in the mortgage records of Orleans Parish on the date of the purchase of the station wagon). Although Eustis denied that he received such instructions from plaintiff, the Secretary-Treasurer of New Orleans Motor Co., Inc., Mr. C. H. Fitzpatrick, who prepared the sale and mortgage documents from information furnished not by plaintiff but by Eustis, testified that Eustis told him plaintiff required two individual signatures, i. e., the signatures of both parties involved in the purchase. The requirement of two signatures could only mean comakers or endorsers as the signature of the corporation needed only one official signature with a resolution of the board of directors au-

thorizing the transaction. The signatures of two officers instead of one would have added no more authority than the signature of only one were either or both acting under corporate authorization. It is significant that both parties involved signed in their individual capacity, not as officers of the corporation; and it nowhere appears that the corporation ever adopted a resolution, none being attached to the mortgage and note authorizing a corporate purchase. Thus the testimony educed from the witnesses of both parties convinces us that not only were the documents executed as demanded by plaintiff, but that plaintiff had no actual knowledge of any dealing, agreement or understanding had between Duvic and Alker with the New Orleans Motor Co., Inc., the original parties to the instruments, other than as aforestated.

Despite Eustis' positive denial that he had any authority whatsoever expressed or implied to represent plaintiff or to act as plaintiff's agent, and despite the further fact that the chattel mortgage contains a clause expressly declaring that the motor company was not plaintiff's agent for any purpose, Duvic contends that the evidence discloses that plaintiff was so closely connected with the entire transaction that it cannot be heard to say that it, in good faith, was an innocent purchaser and must be charged with knowledge of any equities existing between the original parties, citing as authority C.I.T. Corporation v. Emmons,

La.App., 197 So. 662. In that case plaintiff, the holder of a note secured by a chattel mortgage on a refrigerator, instituted suit against the maker thereof after the refrigerator had been destroyed by fire. The court found that plaintiff had directed execution of the note and the chattel mortgage and had given its instructions as to finance charges and the amount of monthly installments, which included a sufficient amount for obtaining insurance on the refrigerator. The defense was that the plaintiff was not a holder in due course, and that the note was, or should have been, fully paid and satisfied from the proceeds of the insurance. In affirming a judgment for defendant the court stated that plaintiff had full knowledge of defendant's contracting to pay a sufficient amount for the insurance, and that consequently plaintiff stood in the shoes of the seller. This case is clearly inapposite for the reason that in the instant case the plaintiff had no actual knowledge of the defense or equities between the original parties to the instruments.

There are some jurisdictions in which the courts fictitiously transfer the knowledge of the payee-vendor to the endorsee-finance company on the theory that the finance company is so directly interested and involved in the transaction of purchase that it cannot escape the legal imputation that it stands in the shoes of the vendor. Commercial Credit Co. v. Childs, 199 Ark. 1073, 137 S.W.2d 260, 128 A.L.R. 726; Clark v.

Roberts, 206 Mass. 235, 92 N.E. 461; Commercial Credit Corp. v. Orange County Machine Works, 34 Cal.2d 766, 214 P.2d 819; Mutual Finance Co. v. Martin, Fla., 63 So.2d 649, 44 A.L.R.2d 1. See also Comment, 18 La.L.Rev. 322. This Court, however, in White System of New Orleans v. Hall, 219 La. 440, 53 So.2d 227, has held that our Negotiable Instruments Law does not permit such an inference to be drawn since this would be imposing a duty on the holder to investigate all the circumstances, suspicious and otherwise, surrounding the creation and transfer of negotiable paper while, on the other hand, the NIL requires that the holder must have *actual knowledge* to defeat his claim as a holder in due course.

Plaintiff's actual knowledge of the intention of Duvic to sign solely on behalf of the corporation could only be ascertained from the face of the instrument. It was not a participant in the creation of the note nor in the legal relations existing between vendor and vendee, other than that it demanded two individual signatures. The applicable law on the personal liability of one claiming to sign a negotiable instrument on behalf of a principal is LSA–R.S. 7:20, which provides:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of the words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

While it does not appear that LSA–R.S. 7:20 has had previous interpretation by this Court, it is the generally accepted view in other jurisdictions that Section 20 of the NIL (LSA–R.S. 7:20) provides a means by which one who signs a negotiable instrument for or on behalf of a principal, as maker, may escape personal liability thereon; therefore, when the body of the instrument or the person signing does not indicate that the maker is signing in a representative capacity, it is the intention of the statute that he be bound individually. Coal River Collieries v. Eureka Coal and Wood Company, 144 Va. 263, 132 S.E. 337, 46 A.L.R. 485; Murphy v. Reimann Furniture Mfg. Co., 183 Or. 474, 193 P.2d 1000; Toom v. McCaw, 74 Wash. 335, 133 P. 469, L.R.A.1915A, 590; Lazarov v. Klyce, 195 Tenn. 27, 255 S.W.2d 11; and Betz v. Bank of Miami Beach, Fla., 95 So.2d 891.

In the chattel mortgage and note before us there is nothing other than the name of the corporation typed at the top of the chattel mortgage to indicate that Duvic intended to bind only the corporation and not himself individually. He signed as he would have if it had been his intention to bind himself individually. Not having

availed himself of the opportunity allowed him, and expressed in LSA–R.S. 7:20, and thereby escape personal liability, he must be held personally liable as maker.

Plaintiff, having conclusively shown that it acquired the note as a holder in due course, as set out under the requirements of LSA–R.S. 7:52, it follows that it is a holder in due course and entitled to enforce payment of the note against appellant.

For the reasons assigned, the judgment of the district court is affirmed, defendant Duvic to pay all costs of this appeal.